## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

TIMOTHY CANFIELD, ANDREW CATTANO, )
JAMES LETT, DENNIS PECK, STEVEN )
SPRATLEY, SUSAN STEBBINS, and YVETTE )
TAYLOR, on behalf of themselves and all others )
Similarly situated, )
                                            )
             Plaintiffs, )           Civil Action No. 17-1789-MN-SRF
                                            )
             v. )
                                              )
FCA US LLC, )
                                            )
            Defendant. )

## REPORT AND RECOMMENDATION

### I.    INTRODUCTION

Presently before the court in this putative class action suit concerning alleged defective

tire components is a motion to dismiss for failure to state a claim upon which relief can be

granted pursuant to Federal Rule of Civil Procedure 12(b)(6)[1] filed by defendant FCA US LLC

("FCA US").[2] (D.I. 12) For the following reasons, I recommend granting-in-part and denying-

in-part FCA US's motion.

### II.    BACKGROUND

#### A.    The Parties

FCA US is a Delaware limited liability company headquartered in Auburn Hills,

Michigan. (D.I. 11 at ¶ 20) The complaint alleges that FCA US is the United States subsidiary

---

[1] Defendant FCA US's opening brief in support of its motion to dismiss is D.I. 13, plaintiffs' answering brief is D.I. 17, and FCA US's reply brief is D.I. 18. Plaintiff's Amended Complaint is D.I. 11.

[2] FCA US LLC is formerly known as Chrysler Group LLC. (D.I. 11 at ¶ 20) FCA US purchased certain assets of Chrysler LLC in a bankruptcy sale that closed on June 10, 2009. (D.I. 13 at 3 n.4)

of Italian multinational automaker Fiat S.p.A. (*Id.*) FCA US designs, manufactures, and sells automobiles throughout the United States under various brand names, including the "Jeep," "Dodge," and "Chrysler" brands. (*Id.* at ¶ 24)

Named plaintiff Timothy Canfield ("Canfield") is a citizen and resident of Marlette, Michigan. (*Id.* at ¶ 13) Named plaintiff Andrew Cattano ("Cattano") is a citizen and resident of Summit, New Jersey. (*Id.* at ¶ 14) Named plaintiff James Lett ("Lett") is a citizen and resident of North Ridgeville, Ohio. (*Id.* at ¶ 15) Named plaintiff Dennis Peck ("Peck") is a citizen and resident of Jackson, Michigan. (*Id.* at ¶ 16) Named plaintiff Steven Spratley ("Spratley") is a citizen and resident of Brooklyn, New York. (*Id.* at ¶ 17) Named plaintiff Susan Stebbins ("Stebbins") is a citizen and resident of Rahway, New Jersey. (*Id.* at ¶ 18) Named plaintiff Yvette Taylor ("Taylor") (together, with the other named plaintiffs, "plaintiffs") is a citizen and resident of Holyoke, Massachusetts. (*Id.* at ¶ 19)

## B. Facts

Plaintiffs allege that Chrysler Town & Country, Dodge Grand Caravan, Jeep Liberty, and Dodge Journey vehicles manufactured after June 10, 2009 ("Class Vehicles") are equipped with a defective component – a copper-bearing aluminum 2000 series metal alloy ("AL2000") valve stem and nut on vehicles equipped with a tire pressure monitoring system ("TPMS").[3] (*Id.* at ¶¶ 1, 5, 7, 24) Plaintiffs allege that the valve stems are defective because they are "subject to corrosion" when "exposed to corrosive elements like road salt." (*Id.* at ¶ 4) Plaintiffs allege that

---

[3] A TPMS is "an electronic system designed to monitor the air pressure inside the pneumatic tires on various types of vehicles." (D.I. 11 at ¶ 2) A TPMS "reports real-time tire-pressure information to the driver of the vehicle by utilizing pressure sensors in the wheels that transmit pressure information to the vehicle's instrument cluster." (*Id.*) United States Congress enacted legislation that mandated all new passenger car models be equipped with TMPS by 2008. (*Id.* at ¶ 3)

2

when a valve stem fails, "air can be rapidly released from the tire without warning," which poses a significant safety risk. (*Id.* at ¶¶ 4, 59)

The vehicles come with a 3-year/36,000 mile Basic Limited Warranty, a 3-year/unlimited-mileage Corrosion Warranty, a 5-year/100,000 mile Outer-Body Corrosion Warranty, a 5-year/100,000 Powertrain Warranty, and a 8-year/1000,000 mile Emissions Warranty. (D.I. 13, Ex. A)

### i. Canfield

In January 2013, Canfield purchased a used 2010 Dodge Journey with 15,000 miles from an undisclosed dealership in Caro, Michigan. (*Id.* at ¶ 93) In December 2015, at an undisclosed mileage, Canfield took his vehicle to a Walmart to have a valve stem replaced. (*Id.* at ¶ 97) In January 2016, at an undisclosed mileage, he took his vehicle to a Belle Tire to have a second valve stem replaced. (*Id.* at ¶ 98) In both instances, he sought a repair because the "TPMS light flashed on his dashboard," alerting him that a tire had low pressure, "before a nearly instantaneous air-out of one of his tires." (*Id.* at ¶ 96)

### ii. Cattano

In 2010, Cattano purchased a 2010 Jeep Liberty with undisclosed miles from a Chrysler dealership in Summit, New Jersey. (*Id.* at ¶ 99) On May 23, 2015, Cattano was driving his vehicle on the highway when the TPMS light came on. (*Id.* at ¶ 102) Almost instantaneously, his right rear tire had an air-out. (*Id.*) Cattano momentarily lost control of his car, but successfully pulled his vehicle over. (*Id.*) He observed that the TPMS module was missing, leaving a hole in the tire's sidewall. (*Id.*) Eventually, on an undisclosed date and at an undisclosed mileage, Cattano took his vehicle to an undisclosed mechanic who recommended

3

replacing and then replaced four valve stems on his vehicle because the TPMS valve stems on his other three tires had begun to crack. (*Id.* at ¶ 103)

### iii. Lett

In March 2010, Lett purchased a new 2010 Chrysler Town & Country with undisclosed miles from a Chrysler dealership in Avon Lake, Ohio. (*Id.* at ¶ 105) In June 2014, Lett's wife was driving the vehicle when a tire suffered an air-out at an undisclosed mileage. (*Id.* at ¶ 107) Lett's wife initially lost control of the vehicle, but successfully pulled the vehicle over. (*Id.*) Upon inspecting the blown out tire, Lett observed a corroded valve stem, which Lett had replaced on an undisclosed date and at an undisclosed mileage. (*Id.*) In the summer of 2015, Lett replaced four valve stems on his vehicle after observing that three were cracked and one was corroded. (*Id.* at ¶ 108)

### iv. Peck

In approximately June 2010, Peck purchased a new 2010 Dodge Journey with undisclosed miles from a Chrysler dealership in Clinton, Michigan. (*Id.* at ¶ 109) On March 3, 2015, at an undisclosed mileage, Peck was driving when he heard a loud noise and saw that the vehicle's TPMS warning light had come on. (*Id.* at ¶ 112) Initially, Peck "felt the car pull to the left," but he successfully pulled the vehicle to the side of the road. (*Id.*) He then observed that the TPMS module was missing and left a hole in the tire. (*Id.*) As a result, Peck had a tire and TPMS valve stem replaced. (*Id.* at ¶ 113)

### v. Spratley

In an undisclosed month in 2012, Spratley purchased a certified, pre-owned 2010 Chrysler Town & Country with "about 65,000 miles" from a Chrysler dealership in Jersey City, New Jersey. (*Id.* at ¶ 114) In early 2015, at an undisclosed mileage, Spratley took his vehicle to

4

an undisclosed mechanic after experiencing a leak in the tire. (*Id.* at ¶ 117) The mechanic noted two cracked valve stems, which Spratley had replaced. (*Id.* at ¶¶ 117-118)

### vi. Stebbins

In August 2012, Stebbins purchased a used 2010 Dodge Journey with 37,000 miles from an undisclosed seller in New Jersey. (*Id.* at ¶ 119) On November 23, 2014, at an undisclosed mileage, Stebbins saw the vehicle's TPMS warning light come on and experienced an air-out of a tire. (*Id.* at ¶ 122) She momentarily lost control of her vehicle, but successfully pulled the vehicle over. (*Id.*) Stebbins observed that the TPMS module was missing and left a hole in her tire. (*Id.*) Stebbins's car was serviced at International Tire and Parts, where she had two tires and three TPMS valve stems replaced. (*Id.* at ¶ 123)

### vii. Taylor

In November 2010, Taylor purchased a used 2010 Dodge Grand Caravan with undisclosed miles from a third-party in Holyoke, Massachusetts. (*Id.* at ¶ 124) On December 8, 2014, Taylor paid $140.43 for her mechanic at D.E. Bourque & Sons, Inc. Automotive Service & Sales to investigate her under-inflated tire and replace her leaking TPMS. (*Id.* at ¶ 128) She returned to her mechanic on February 5, 2015 and paid $134.49 to investigate another under-inflated tire and replace another TPMS. (*Id.* at ¶ 129) She visited her mechanic again on April 27, 2016 and paid $259.76 for her mechanic to remove and replace TPMS on her rear passenger side and front driver side tires. (*Id.* at ¶ 130) On all three visits, Taylor's mechanic informed her that the TPMS was corroded and causing her tire to lose air. (*Id.* at ¶¶ 128-130)

### C. Procedural History

On October 12, 2017, plaintiffs initiated this action by filing a class action complaint in the Superior Court of Delaware. (D.I. 1, Ex. A) On December 12, 2017, FCA US removed the

5

action to this court pursuant to 28 U.S.C. §§ 1441 and 1446. (D.I. 1) On January 18, 2018, FCA US moved to dismiss the original complaint pursuant to Rule 12(b)(6). (D.I. 6) On February 1, 2018, plaintiffs filed an amended complaint ("FAC") in response to the motion. (D.I. 11) On February 15, 2018, FCA US filed the current motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (D.I. 12) The court heard oral argument on May 8, 2018.

## D. Related Case

On August 3, 2016, plaintiffs Spratley, Canfield, Cattano, Lett, Peck, Stebbins, and Taylor filed a complaint in the United States District Court for the Southern District of New York against FCA US.[4] (D.I. 17 at 2) On January 23, 2017, the Southern District of New York transferred the case *sua sponte* to the United States District Court for the Northern District of New York. (*Id.*) On September 12, 2017, the Northern District of New York dismissed plaintiffs' claims for lack of personal jurisdiction with the exception of one plaintiff, Thomas Hromowyk ("Mr. Hromowyk"), who is not a named plaintiff in the case at bar. *See Spratley v. FCA US*, 2017 WL 4023348 (N.D.N.Y. Sept. 12, 2017). The case remains pending before the Northern District of New York, as to Mr. Hromowyk's claims. *See id.*

## III. LEGAL STANDARD

Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the complaint and view them in the light most favorable to the plaintiff. *Umland v. Planco Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008).

---

[4] The complaint was substantively the same as the original pleading later filed in the Delaware Superior Court, removed to this court, and amended.

To state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the complaint must set forth sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A claim is facially plausible when the factual allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 555-56.

When determining whether dismissal is appropriate, the court must take three steps.[5] *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must identify the elements of the claim. *Iqbal*, 556 U.S. at 675. Second, the court must identify and reject conclusory allegations. *Id.* at 678. Third, the court should assume the veracity of the well-pleaded factual allegations identified under the first prong of the analysis, and determine whether they are sufficiently alleged to state a claim for relief. *Id.*; *see also Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). The third prong presents a context-specific inquiry that "draw[s] on [the court's] experience and common sense." *Iqbal*, 556 U.S. at 663-64; *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). As the Supreme Court instructed in *Iqbal*, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

---

[5] Although *Iqbal* describes the analysis as a "two-pronged approach," the Supreme Court observed that it is often necessary to "begin by taking note of the elements a plaintiff must plead to state a claim." 556 U.S. at 675, 679. For this reason, the Third Circuit has adopted a three-pronged approach. *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 n.7 (3d Cir. 2010); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

## IV.  DISCUSSION

### A.  Statutes of Limitations

As a preliminary matter, FCA US argues that the claims at bar were filed on October 12, 2017 – the date the complaint was filed in Superior Court. (D.I. 13 at 8-10)  Plaintiffs contend that their complaint was re-filed in accordance with 28 U.S.C. § 1367(d), which provides for tolling of plaintiffs' state law claims. (D.I. 17 at 2)  Therefore, according to plaintiffs, the operative date for the filing of their claims was August 3, 2016, the date they filed the complaint in the Southern District of New York.  (*Id.*)

Section 1367(d) provides that: "[t]he period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period." 28 U.S.C. § 1367(d).  However, the Northern District of New York dismissed plaintiffs' claims for lack of personal jurisdiction.  *See Spratley*, 2017 WL 4023348, at *6, 8-9.  Relevant case authorities establish that the tolling provision set forth in § 1367(d) does not preserve claims dismissed for lack of personal jurisdiction (as well as improper venue).  *See, e.g.*, *Malone v. Bayerische Hypo-Und Vereins Bank*, 2010 WL 391826, at *8 & n.10 (S.D.N.Y. Feb. 4, 2010), *aff'd sub nom. Malone v. Bayerische Hypo-Und Vereins Bank, AG*, 425 F. App'x 43 (2d Cir. 2011) (citing *Zychek v. Kimball Int'l Mktg. Inc.*, 2006 WL 1075452, at *3 (D. Idaho Apr. 21, 2006) ("The dismissal of all claims (federal and state) . . . was not pursuant to 28 U.S.C. § 1367.  Therefore, the Plaintiff cannot rely on 28 U.S.C. § 1367(d) to toll the statute of limitations."); *Parrish v. HBO & Co.*, 85 F. Supp. 2d 792, 796-97 (S.D. Ohio 1999) ("[T]he court concludes that, for § 1367(d) to be applicable, the supplemental claim brought pursuant to

§ 1367(a) must have been dismissed by the court pursuant to § 1367(c).")); *Flores v. Predco Servs. Corp.*, 2011 WL 883640, at \*1-2 & n.5 (D.N.J. Mar. 11, 2011) (noting that at oral argument, the court ruled 28 U.S.C. §1367(d) did not apply following the trial court's granting of defendants' motion to dismiss. The motion to dismiss was premised on lack of personal jurisdiction and was granted without a written opinion). Therefore, the court recommends that the applicable filing date is the date of the complaint in the instant action filed in the Delaware Superior Court – October 12, 2017.

### i. Counts II and III (Ohio Law)

Counts II and III of the FAC allege causes of action by Lett on behalf of the Ohio Class for deceptive and unfair conduct[6] in violation of the Ohio Consumer Sales Practices Act ("OCSPA"), Ohio Rev. Code Ann. § 1345.01, *et seq.* (D.I. 11 at ¶¶ 156-186) Plaintiffs assert that FCA US violated the OCSPA by "knowingly placing into the stream of commerce Class Vehicles equipped with defective TPMS valve stems that result in, among other problems, sudden and unexpected tire air-outs," and "concealing the defect in the Class Vehicles [and] failing to inform Plaintiff Lett and the other Ohio Class members of this defect." (*Id.* at ¶¶ 160-61, 176-77)

Claims brought under the OCSPA "may not be brought more than two years after the occurrence of the violation which is the subject of suit." Ohio Rev. Code Ann. § 1345.10(C). Lett claims to have purchased his new 2010 Chrysler Town & Country in March 2010. (D.I. 11

---

[6] In general, the Ohio Consumer Sales Practices Act ("OCSPA") "defines 'unfair or deceptive consumer sales practices' as those that mislead consumers about the nature of the product they are receiving, while 'unconscionable acts or practices' relate to a supplier manipulating a consumer's understanding of the nature of the transaction at issue." *Grothaus v. Warner*, 2008 WL 4712816, at \*6 (Ohio Ct. App. Oct. 28, 2008), *on reconsideration*, 2008 WL 5265897 (Ohio Ct. App. Dec. 18, 2008) (internal citation omitted).

9

at ¶ 105) Because this action was not filed until October 12, 2017, FCA US contends that Lett's claims in Counts II and III are time-barred by the applicable statute of limitations. (D.I. 13 at 8-9) Plaintiffs contend that Lett's claims under the OCSPA are timely. (D.I. 17 at 7) Lett does not allege any further acts or omissions by FCA US beyond his claims related to an omission at the time of sale, but instead contends continuing violations are not time-barred based on allegations that FCA US did not recall, replace, or reimburse him for allegedly defective valve stems after his purchase, and within the last two years. (*Id.* at 7-8)

When a party seeks damages under the OCSPA, the two-year limitations period is "absolute, and the discovery rule does not apply." *Zaremba v. Marvin Lumber & Cedar Co.*, 458 F. Supp. 2d 545, 552 (N.D. Ohio 2006) (citing *Lloyd v. Buick Youngstown GMC*, 686 N.E.2d 350 (Ohio Ct. App. 1996)); *see also Quetot v. M & M Homes, Inc.*, 2013 WL 793219, at *3 (Ohio Ct. App. Feb. 25, 2013) ("No discovery rule applies to claims for monetary damages under the [OCSPA]."). The statute of limitations under the OCSPA applies to "an unfair or deceptive act or practice in connection with a consumer transaction . . . whether it occurs before, during, or after the transaction." Ohio Rev. Code Ann. § 1345.02(A).

Plaintiffs argue that "[i]n the case of remedial legislation such as the [OCSPA], the term 'occurrence of the violation,' where the violation is a continuing or episodic one, will denote the time when the violation ceases," and cites *RY/EH, Inc. v. Arthur Treacher's, Inc.*, 685 N.E.2d 316, 318 (Ohio Ct. App. 1996) as support. (D.I. 17 at 7) (internal quotation marks and emphasis omitted) However, *Treacher's* makes no such holding, and that case does not examine the OCSPA, but rather interprets the Ohio Business Opportunity Purchasers Protection Act, Ohio Rev. Code Ann. § 1334.01, *et seq.*, which provides remedies to those who have been misled by dishonest or negligent franchisors. *See Treacher's*, 685 N.E.2d at 318-19. The statute of

limitations begins to run from the date of the occurrence of the violation, which is not necessarily the date of any underlying transaction. *See* Ohio Rev. Code Ann. §§ 1345.01(A), 1345.10(C); *Varavvas v. Mullet Cabinets, Inc.*, 923 N.E.2d 1221, 1225 (Ohio Ct. App. 2009). Ohio courts have rejected arguments similar to plaintiffs' argument that, as long as FCA US or a defendant failed to act in accordance with its alleged representations, the statute of limitations did not begin to run. *See Montoney v. Lincoln Logs, Ltd.*, 2007 WL 155451, at \*12 (Ohio Ct. App. Jan. 23, 2007); *see also Varavvas*, 923 N.E.2d at 1226 (holding that limitations period began at time of sale, not when seller failed to fix defect). Otherwise, there would be an open ended limitations period in those instances where a seller fails to remedy the original alleged violation.

Therefore, the statute of limitations began to run in March 2010, at the time of purchase. As such, I recommend that plaintiffs' claims under Counts II and III be dismissed as time-barred by the applicable two-year statute of limitation under the OCSPA.

## ii. Counts IV and V (Michigan Law)

Counts IV and V of the FAC assert causes of action by Canfield[7] and Peck on behalf of the Michigan Class for deceptive and unfair trade practices in violation of the Michigan Consumer Protection Act ("MCPA"), Mich. Comp. Laws Ann. § 445.903, *et seq.* (D.I. 11 at ¶¶ 187-212)

Under the MCPA, "an action under this section shall not be brought more than six years after the occurrence of the method, act, or practice which is the subject of the action . . . ." Mich. Comp. Laws Ann. § 445.911(7). In analyzing the MCPA, Michigan courts have concluded that "failure to reveal a material fact, the omission of which tends to mislead or deceive the consumer

---

[7] FCA US LLC does not argue that Canfield's claims should be dismissed as untimely under the six-year limitations period of the MCPA. (D.I. 13 at 9)

and which fact could not reasonably be known by the consumer, is an unfair, unconscionable, or deceptive method, act, or practice in the conduct of trade or commerce." *Laura v. DaimlerChrysler Corp.*, 711 N.W.2d 792, 794 (Mich. Ct. App. 2006). When a MCPA claim is predicated on an alleged omission, the limitations period begins to run at the time of purchase, not when the product first fails. *Id.* Here, plaintiffs proceed on a material omissions theory. (D.I. 17 at 10 n.7)

In June 2010, Peck purchased a new 2010 Dodge Journey. (D.I. 11 at ¶ 109) Because this action was initiated seven years after the date of purchase, FCA US argues that the MCPA claims must be dismissed as time-barred. (D.I. 13 at 9) Plaintiffs argue that Peck never received any reimbursement from FCA US. (D.I. 17 at 7) Additionally, plaintiffs assert that Peck brings both pre-sale and post-sale claims under the MCPA, both of which are timely. (*Id.*) Plaintiffs do not directly address how Peck's claims related to an omission at the time of sale survive the statute of limitations bar. (*See id.*) In support of their position for post-sale claims, plaintiffs rely on *Tomassini v. FCA U.S. LLC*, 2015 WL 3868343 (N.D.N.Y. June 23, 2015). (D.I. 17 at 7)

In *Tomassini*, the Northern District of New York held that to the extent that the defendant became aware of any valve defect post-sale, defendant's deceptive conduct included "failing to recall the defective parts, replace the defective valve stems voluntarily, or reimburse owners for the costs incurred to replace the defective stems." *Tomassini*, 2015 WL 3868343, at *9. Through these post-sale omissions, the plaintiff in *Tomassini* was injured by incurring repair costs and this injury satisfied the causation element of his claim under New York law. *Id.* Plaintiffs argue that "[t]he same result should follow here [because FCA US's] pre-sale and post-sale failure to disclose, coupled with its failure to reimburse owners such as Plaintiff Peck for the costs incurred to replace the defective stems is actionable." (D.I. 17 at 7)

12

However, *Tomassini* was decided in accordance with New York's General Business Law, not the MCPA, and did not involve a statute of limitations issue. *See Tomassini*, 2015 WL 3868343, at *1. Plaintiffs do not present any additional arguments as to why Peck's claims are not barred by the six-year statute of limitations under the MCPA. (*See* D.I. 17 at 7) Peck's vehicle was purchased in June 2010, and this action was not initiated until October 2017, more than six years after the purchase. Therefore, I recommend granting FCA US's motion to dismiss Peck's MCPA claims as time-barred.

### iii. Counts VII and VIII (Massachusetts Law)

Counts VII and VIII of the FAC assert causes of action by Taylor on behalf of the Massachusetts Class for deceptive and unfair acts and practices in violation of the Massachusetts Consumer Protection Act ("Massachusetts CPA"), Mass. Gen. Laws ch. 93A, § 1 *et seq.* (D.I. 11 at ¶¶ 223-241) Plaintiffs assert FCA US violated the Massachusetts CPA in using unconscionable and unfair business practices "by failing to disclose, at the point of sale or otherwise, that the TPMS valve stems in Class Vehicles are defective and pose a safety hazard." (D.I. 11 at ¶¶ 227, 236)

An action arising under Chapter 93A must be filed within four years after the cause of action accrues. *Columbia Plaza Assocs. v. Northeastern Univ.*, 2016 WL 8200500, at *6 (Mass. Super. Dec. 15, 2016) (citing Mass. Gen. Laws Ann. ch. 260, § 5A). The Massachusetts common law discovery rule "provides that the statute of limitations is tolled until a plaintiff knows, or reasonably should have known, that it has been harmed or may have been harmed by the defendant's conduct." *Oliver v. Bank of America, N.A.*, 2013 WL 3732877, at *3 (D. Mass. June 17, 2013) (quoting *Massachusetts Eye & Ear Infirmary v. QLT Photopherapeutics, Inc.*, 412 F.3d 215, 238 (1st Cir. 2005)). The discovery rule arises: "where a misrepresentation concerns a

fact that was 'inherently unknowable' to the injured party, where a wrongdoer breached some duty of disclosure, or where the wrongdoer concealed the existence of a cause of action through some affirmative act done with the intent to deceive." *Id.* (internal quotation marks omitted) (quoting *Albrecht v. Clifford*, 767 N.E.2d 42, 49 (Mass. 2002)). A fact is inherently unknowable if "it is incapable of detection by the wronged party through the exercise of reasonable diligence." *Id.* (quoting *Geo. Knight & Co., Inc. v. Watson Wyatt & Co.*, 170 F.3d 210, 213 (1st Cir. 1999)). "Reasonable notice that . . . a particular act of another person may have been a cause of harm to a plaintiff creates a duty of inquiry and starts the running of the statute of limitations." *Columbia Plaza Assocs.*, 2016 WL 8200500, at *6 (internal quotation marks omitted) (quoting *Bowen v. Eli Lilly & Co.*, 557 N.E.2d 739, 743 (Mass. 1990)).

The parties do not dispute that Taylor's Massachusetts CPA claim is subject to a four-year limitations period which began to run when she had reason to know of the alleged valve stem defect. However, the parties dispute when Taylor may be deemed to have reason to know of the defect. FCA US argues that, according to Taylor, information about the alleged defect underlying her claims was publicly available "as early as July 2009." (D.I. 13 at 9) (citing D.I. 11 at ¶ 26) FCA US contends that Taylor "cannot attribute this public information to [FCA US] without admitting that such public facts also gave her 'reason to know' of the alleged defect before, or at the time, she purchased her vehicle in November 2010." (*Id.* at 9-10) Because this action was not filed until October 2017, almost seven years after the date of purchase, FCA US argues that Counts VII and VIII should be dismissed as time-barred. (*Id.*)

Plaintiffs allege that the limitations period should begin on December 8, 2014, when Taylor became aware that one of her TMPS units was corroded and causing her tire to lose air. (D.I. 17 at 6) (citing D.I. 11 at ¶ 128) Plaintiffs argue that the NHTSA complaints filed as early

14

as July 2009 did not put Taylor on notice of the defect. (*Id.* at 6 n.4) Plaintiffs cite *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices & Prod. Liab. Litig.*, 754 F. Supp. 2d 1208 (C.D. Cal. 2010) to support this argument. (D.I. 17 at 6) The court in *In re Toyota Motor Corp.* concluded that "[w]hile prospective customers could have been tipped off . . . by researching past complaints filed with NHTSA, many customers would not have performed such a search, nor would they be expected to. Moreover, searching publicly available information through NHTSA and/or the public record would have only revealed the tip of the iceberg, according to the factual allegations in Plaintiffs' complaints." *In re Toyota Motor Corp.*, 754 F. Supp. 2d at 1227.

At this stage of the proceedings, the FAC must be viewed in plaintiffs' favor and the court must accept the well pleaded allegations as true. Therefore, the FAC sufficiently pleads that Taylor did not have reason to know of the alleged tire valve stem defect until December 8, 2014, when her mechanic informed her that her TPMS was corroded. Therefore, I recommend that the defendant's motion to dismiss Taylor's claim under the Massachusetts CPA as time-barred be denied.

### iv. Counts VI, IX, and X (Warranty Claims)

Count VI of the FAC asserts a cause of action by Canfield and Peck on behalf of the Michigan Class for breach of the implied warranty of merchantability. (D.I. 11 at ¶¶ 213-222) Count IX of the FAC alleges a cause of action by Taylor on behalf of the Massachusetts Class for breach of the implied warranty of merchantability under Massachusetts Law, Mass. Gen. Laws Ann. §§ 2-314, 2-315. (*Id.* at ¶¶ 242-250) Count X of the FAC asserts a claim by plaintiffs on behalf of the respective classes for breach of express warranty. (*Id.* at ¶¶ 251-265)

15

#### a. Count VI (Implied Warranty under Michigan Law)

FCA US argues that the statute of limitations for a breach of implied warranty claim is subject to a four-year statute of limitations, measured from the date of delivery. (D.I. 13 at 10) *See Gernhardt v. Winnebago Indus.*, 2006 WL 334242, at *4 (E.D. Mich. Feb. 13, 2006) (citing Mich. Comp. Laws § 440.2725(1)-(2)). Here, Canfield and Peck, who bring implied warranty claims under Michigan law, admit they purchased their vehicles in January 2013 and June 2010 respectively. (D.I. 11 at ¶¶ 93, 109) Therefore, FCA US alleges that Count VI should be dismissed as time-barred because plaintiffs took delivery more than four years prior to filing the instant suit.

Plaintiffs, however, argue that because of "the discovery rule, the presence of a continuing violation and Defendant's post-sale conduct," their implied warranty claims are timely. (D.I. 17 at 8) Plaintiffs cite no authority to support this argument, and the Court of Appeals of Michigan rejected the use of the discovery rule in breach of warranty claims in *McCoy v. Lamotte Coachlight Corp.*, 2007 WL 4270659, at *3 (Mich. Ct. App. Dec. 6, 2007). Therefore, I recommend rejecting plaintiffs' argument on this first point.

#### 1. Unconscionability

Alternatively, plaintiffs argue that they have adequately alleged that the durational limitations in the Basic Limited Warranty are unconscionable.[8] (D.I. 17 at 8) Plaintiffs cite *Skeen v. BMW of N. Am., LLC*, 2014 WL 283628, at *15 (D.N.J. Jan. 24, 2014) in support of this argument. (*Id.* at 9) In *Skeen*, the court concluded that: "[w]here the alleged breach regards a latent defect that manifests outside the period covered by the warranty, a plaintiff may

---

[8] The plaintiffs collectively address defendant's statute of limitations arguments as to the implied and express warranty claims since the warranty claims are subject to the same durational limits, i.e., four years from the date of delivery of the vehicle. (D.I. 17 at 8-9)

16

sometimes state a claim if he alleges that the warranty was unconscionable." *Skeen*, 2014 WL 283628, at *12. The plaintiffs in *Skeen* pleaded that "Defendants knew about a defect . . . ; that the warranties they provided to Plaintiffs failed to disclose this fact; that plaintiffs who reported engine problems . . . were told misleading information by Defendants or their agents; and that Defendants provided this misleading information intentionally to buy time until after they were no longer obligated by the warranty to make the necessary repairs." *Id.* at *15 (internal citations omitted). Therefore, the court found that the plaintiffs had adequately pleaded an unconscionability claim. *Id.* However, the court noted that it was not determining that the warranties were unconscionable, and that the unconscionability determination was "highly fact dependent and . . . not appropriate for determination on a motion to dismiss." *Id.*

However, the court is unpersuaded that *Skeen* saves plaintiffs' implied and express warranty claims from being time-barred. *Skeen* appears to be an outlier and the District Court of New Jersey has largely declined to adopt its holding. *See, e.g.*, *McQueen v. BMW of N. Am., LLC*, 2014 WL 656619, at *7 n.14 (D.N.J. Feb. 20, 2014) ("The Court is aware that *Skeen* expressly rejects *Alban* and finds that the plaintiffs in that case 'adequately allege[ ] substantive unconscionability by claiming that Defendants knew [an automotive part] would fail and manipulated . . . warranty terms to avoid paying for it.' This Court concludes that the reasoning utilized in *Alban* is a more cogent application of *Duquense*, binding Third Circuit authority." (internal citations omitted)). Plaintiffs have not provided any other authority to support their assertion that sufficiently pleading unconscionability tolls the statute of limitations for warranty

17

claims.[9] (D.I. 17 at 8-9) Therefore, I recommend rejecting plaintiffs' argument on this second point.

## 2. Tolling & Estoppel

Finally, plaintiffs aver that their implied warranty claim is timely because they have adequately alleged that tolling and estoppel apply. (D.I. 17 at 8; D.I. 11 at ¶¶ 143-144) The FAC alleges that because FCA US allegedly knew about the TPMS defect and "concealed it and/or failed to alert purchasers or potential purchasers," FCA US is "estopped from relying on any statutes of limitation or repose due to its acts of concealment." (D.I. 11 at ¶ 144) The Sixth Circuit stated that in order to toll the statute of limitations based on fraudulent concealment, a plaintiff must prove that "(1) [the] defendant[ ] concealed the conduct that constitutes the cause of action; (2) defendant['s] concealment prevented plaintiffs from discovering the cause of action within the limitations period; and (3) until discovery, plaintiffs exercised due diligence in trying to find out about the cause of action." *Guy v. Mercantile Bank Mrtg. Co.*, 711 F. App'x 250, 253 (6th Cir. 2017) (quoting *Egerer v. Woodland Realty, Inc.*, 556 F.3d 415, 422 (6th Cir. 2009)). In doing so, the plaintiff must plead the factual allegations supporting a claim of fraudulent concealment with particularity and establish affirmative acts of concealment. *Id.* (quoting *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 446 (6th Cir. 2012)). "Mere silence, or [an] unwillingness to divulge one's allegedly wrongful activities, is not sufficient to warrant tolling." *Id.* (internal quotation marks omitted) (quoting *Pinney Dock & Transp. Co. v. Penn Cent. Corp.*, 838 F.2d 1445, 1465-72 (6th Cir. 1988)). Equitable tolling is appropriate when the "defendant's

---

[9] Plaintiffs do not plead unconscionability in Counts VI, IX, or X. (D.I. 11 at ¶¶ 213-222, 242-265) To the extent plaintiffs plead unconscionability, they allege that the durational time limit is unconscionable but fail to recite any facts to support that conclusion. (*Id.* at ¶ 86) Even if plaintiffs had adequately pleaded unconscionability for their warranty claims, they fail to provide legal authority to argue that these claims should survive the statute of limitations bar.

allegedly fraudulent statements constituted a 'plausible explanation' that 'lulled [the plaintiffs] into not filing [their] claim[s] sooner.'" *Id.* (quoting *Hill v U.S. Dep't of Labor*, 65 F.3d 1331, 1337 (6th Cir. 1995)).

The FAC sufficiently alleges that internal emails, reports, and analyses were within the exclusive control of FCA US and were actively concealed. (D.I. 11 at ¶¶ 31-34, 40-44, 80-82, 143) Furthermore, the FAC alleges that FCA US spoke candidly about the defect internally but made such information unavailable to consumers. (*Id.* at ¶ 75-76, 82-85) Finally, the FAC alleges that the defect was unknown and not reasonably discoverable to plaintiffs until they experienced the defect firsthand. (*Id.* at ¶ 88) Therefore, plaintiffs have adequately pleaded that FCA US's concealment exceeded mere silence to invoke equitable tolling. The court recommends denying-in-part FCA US's motion to dismiss with regards to the timeliness of Count VI's implied warranty claims under Michigan law.

### b. Count IX (Implied Warranty under Massachusetts Law)

FCA US argues that breach of implied warranty claims under Massachusetts law are subject to a four-year statute of limitations, measured from the date of delivery. (D.I. 13 at 10) *See Howard v. IKO Mfg., Inc.*, 2011 WL 2975813, at \*3 (Mass. App. Div. July 20, 2011) ("a cause of action for breach of warranty accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach; and the warranty period begins when tender of delivery is made."); *Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 323 (1st Cir. 2008) (citing Mass. Gen. Laws Ann. ch. 106 § 2-725(1)-(2)). Here, Taylor, who brings her implied warranty claim under Massachusetts law, concedes that she purchased her vehicle in November 2010. (D.I. 11 at ¶ 124) Therefore, FCA US alleges that Count IX should be dismissed as time-barred. Plaintiffs argue that their implied warranty claim is timely because of

"the discovery rule, the presence of a continuing violation and Defendant's post-sale conduct." (D.I. 17 at 8) Plaintiffs cite no authority to support this argument. (*Id.*).

### 1. Unconscionability

Plaintiffs argue that they have adequately plead unconscionability and therefore this implied warranty claim is timely. (D.I. 17 at 8-9) For the reasons stated in section (IV)(A)(iv)(a)(1) *supra*, I recommend rejecting plaintiff's argument on this point.

### 2. Tolling & Estoppel

The FAC alleges that because FCA US allegedly knew about the TPMS defect and "concealed it and/or failed to alert purchasers or potential purchases," FCA US is "estopped from relying on any statutes of limitation or repose due to its acts of concealment." (*Id.* at ¶ 144) To invoke estoppel under Massachusetts law, "the plaintiff has an affirmative burden to plead in its complaint" that a defendant "made representations [it] knew or should have known would induce the plaintiffs to put off bringing a suit and that the plaintiffs did in fact delay in reliance on the representations." *Trans-Spec Truck Serv.*, 524 F.3d at 325-26 (emphasis omitted) (quoting *White v. Peabody Const. Co.*, 434 N.E.2d 1015, 1023 (Mass. 1982)). The FAC sufficiently alleges that internal emails, reports, and analyses were within the exclusive control of FCA US and were actively concealed. (D.I. 11 at ¶¶ 31-34, 40-44, 80-82, 143) Moreover, the FAC alleges that plaintiffs did not know of and could not reasonably discover the defect and, as a result, many consumers were unaware of the defect. (*Id.* at ¶¶ 88, 90) Therefore, plaintiffs have adequately pleaded that they delayed in bringing suit because of FCA US's omissions to invoke equitable tolling. The court recommends denying-in-part FCA US's motion to dismiss with regards to the timeliness of Count IX's implied warranty claims under Massachusetts law.

### c. Express Warranty

As to Count X, FCA US argues that in each state in which plaintiffs purchased their respective vehicles, the statute of limitations to bring a claim for breach of an express warranty is four years, measured from the date of initial delivery of the product. (D.I. 13 at 10) *See Siriano v. Goodman Mfg. Co.*, 2015 WL 12748033, at *5 (S.D. Ohio Aug. 18, 2015) (citing Ohio Rev. Code Ann. § 1302.98(A)-(B)) (holding under Ohio law that limitations period is four years, and claim accrues when "tender of delivery is made"); *Nobile v. Ford Motor Co.*, 2011 WL 900119, at *3 (D.N.J. Mar. 14, 2011) (holding under New Jersey law that "[a]n action for breach of any contract for sale must be commenced within four years after the cause of action has accrued" and a "breach of warranty occurs when tender of delivery is made"); *Gernhardt v. Winnebago Indus.*, 2006 WL 334242, at *3 (E.D. Mich. Feb. 13, 2006) (holding under Michigan law that "[a]n action for breach of any contract for sale must be commenced within 4 years after the cause of action has accrued," and a breach of warranty occurs when tender of delivery is made); *Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 323 (1st Cir. 2008) (analyzing Mass. Gen. Laws ch. 106 § 2-725(1) and noting that "[t]he cause of action for breach of warranty is time-barred if brought more than four years after tender of delivery."). FCA US contends that because this action was commenced on October 12, 2017, more than four years after each plaintiff took delivery of his or her vehicle, Count X must be dismissed as time-barred.

In support of their express warranty claim under Count X, plaintiffs again attempt to draw parallels between their allegations and *Skeen*. (D.I. 17 at 8-9) For the reasons stated in section (IV)(A)(iv)(a)(1) *supra*, this does not alter the applicable limitations period. *McQueen*, 2014 WL 656619, at *7 n.14. Therefore, the court recommends that the express warranty claim at Count X should be dismissed as time-barred.

## B. Legal Sufficiency

### i. Statutory Consumer Protection Act Claims

FCA US argues that, to the extent plaintiffs' claims are based on any omissions,[10] they should be dismissed because plaintiffs fail to meet the heightened pleading standard required by Rule 9(b).[11]  (D.I. 13 at 13)  FCA US argues that Fed. R. Civ. P. 9(b) applies to such claims, which mandates that plaintiffs plead with particularity "the type of facts omitted, where the omitted facts should have been stated, and the way in which the omitted facts made the representations misleading." *Elbeco Inc. v. Nat'l Ret. Fund*, 2016 WL 3902933, at *7 (E.D. Pa. July 19, 2016).  FCA US asserts that the FAC fails to describe "the precise information allegedly withheld, when or where it should (or could) have been revealed, the person(s) responsible for the failure to disclose, or the circumstances of their vehicle purchases including who they talked to and where they looked for information." (D.I. 13 at 13)  Additionally, FCA US avers that plaintiffs have failed to show that FCA US had a duty to disclose.  (*Id.*)

Plaintiffs argue that a more relaxed pleading requirement under Rule 8 should apply given that their claims involve "unfair conduct." (D.I. 17 at 9-10)  However, they assert that even if Rule 9(b) were to apply, the FAC still complies with the heightened pleading standard.

---

[10] In its opening brief, FCA US LLC presents arguments as to why any claims on behalf of Plaintiffs based on affirmative representations should be dismissed. (D.I. 13 at 12-13)  However, in their answering brief, Plaintiffs concede that they proceed on a material omissions theory only, and do not respond to FCA US LLC's arguments about affirmative representations. (D.I. 17 at 10 n.7)

[11] Both parties provide general arguments addressing all of the statutory consumer protection act claims together, and do not address each individual claim. (*See* D.I. 13 at 12-15; D.I. 17 at 9-14)  FCA US LLC generally argues that Rule 9(b) should apply to all statutory consumer protection act claims, while plaintiffs generally argue that Rule 8 should instead apply. (*See* D.I. 13 at 12-15; D.I. 17 at 9-14)  The court analyzes each claim separately.

*(Id.* at 10) Plaintiffs claim that the allegations regarding the internal reports, emails, and data show FCA US knew about the TPMS units and are sufficient to support their claims. *(Id.* at 11)

### a. Count I (New Jersey Law)

In plaintiffs' first cause of action, plaintiffs allege that FCA US violated the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. § 56:8-1, *et seq.*, by knowingly misrepresenting and intentionally omitting material information by failing to disclose the "known defects in the TPMS valve stem and the known risks associated therewith." (D.I. 11 at ¶ 149) Rule 9(b) applies to all claims under the NJCFA. *See Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 98 (D.N.J. 2011) (citing *F.D.I.C. v. Bathgate*, 27 F.3d 850, 876-77 (3d Cir. 1994); *Naporano Iron & Metal Co. v. American Crane Corp.*, 79 F. Supp. 2d 494, 510 (D.N.J. 2000)). "[T]o allege a claim under the NJCFA, Rule 9(b) requires that a plaintiff plead (1) a specific false representation [or omission] of material fact; (2) knowledge by the person who made it of its falsity; (3) ignorance of its falsity by the person to whom it was made; (4) the intention that it should be acted upon; and (5) that the plaintiff suffered an ascertainable loss as a result of the misrepresentation." *Alban v. BMW of N. Am.*, 2011 WL 900114, at *10 (D.N.J. Mar. 15, 2011). Rule 9(b) does not require plaintiffs to allege, as FCA US contends, the date on which and location where they purchased their vehicles. *See In re Gerber Probiotic Sales Practices Litig.*, 2014 WL 1310038, at *7 (D.N.J. Mar. 31, 2014). The Third Circuit has noted that courts should "apply the rule with some flexibility and should not require plaintiffs to plead issues that may have been concealed by the defendants." *In re Cendant Corp. Sec. Litig.*, 190 F.R.D. 331, 335 (D.N.J. 1999) (internal quotation marks omitted) (quoting *Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 658 (3d Cir. 1998)).

### 1. Specific false representation or omission of material fact

Here, plaintiffs allege that FCA US failed to disclose a known defect with regards to its TPMS units to actual and potential purchasers of its vehicles. (D.I. 11 at ¶ 149) Plaintiffs allege that in failing to do so, FCA US "knowingly and intentionally concealed material facts" from consumers. (*Id.* at ¶ 151) Therefore, plaintiffs have sufficiently alleged specific omission of a material fact. *See Coba v. Ford Motor Co.*, 2013 WL 244687, at *9 (D.N.J. Jan. 22, 2013).

### 2. Knowledge by the person who made it of its falsity

Plaintiff alleges that FCA US knew of the alleged defect through its dealers, its customers through repairs, complaints in the National Highway Transportation Safety Administration ("NHTSA") database as early as July 2009, and a Transport Canada Active Defect investigation opened in October 2010. (*Id.* at ¶ 26) Additionally, the FAC alleges that FCA US's internal emails and lab reports note the TPMS units' defect as early as April 2010. (*Id.* at ¶¶ 31-34) Moreover, plaintiffs allege that FCA US was put on notice of the alleged defect even by their own engineers "who personally owned Chrysler minivans and had experienced the defect." (*Id.* at ¶ 40-44) Plaintiffs allegations in the context of the above pleaded facts contained in the FAC plausibly alleges that FCA US had requisite knowledge. *See Robinson v. Kia Motors America, Inc.*, 2015 WL 5334739, at *5 (D.N.J. Sept. 11, 2015); *Block v. Jaguar Land Rover N. Am., LLC*, 2017 WL 902860, at *9 (D.N.J. Mar. 7, 2017); *In re Gerber Probiotic Sales Practice Litig.*, 2014 WL 3446667, at *5-6 (D.N.J. July 11, 2014).

FCA US does not dispute that plaintiffs have sufficiently pleaded its knowledge of the defect, but argues that an automobile manufacturer "does not have a general duty to disclose that a component part *may* fail." (D.I. 13 at 13) (emphasis added) FCA US relies on *Alban* to support its assertion that a plaintiff must "sufficiently allege that the defendant manufacturer

knew *with certainty* that the product at issue or one of its components was going to fail." (*Id.*) (emphasis added) *See Alban*, 2011 WL 900114, at *10. However, the present case is distinguishable from *Alban* in that plaintiffs have pleaded sufficient facts to bolster its allegation that FCA US knew not only that the TPMS units would fail, but also that they *were failing* – in some cases, even on their own employees' vehicles. (D.I. 11 at ¶¶ 40-44)

### 3. Ignorance of its falsity by the person to whom it was made

The FAC alleges that "while Chrysler officials spoke candidly to its own engineers who complained, customers who were not Chrysler employees were given no information about the defect," and often told "this is how the vehicle was designed, engineered and built. Any additional information is either unavailable or considered proprietary." (*Id.* at ¶ 82-84) The FAC alleges that the plaintiffs did not know about the alleged defect at the time they purchased their vehicles. (*Id.* at ¶ 91) Moreover, plaintiffs allege that the defect was "not known to or reasonably discoverable by the Plaintiffs and proposed class members before purchase or lease, or without experiencing the defect first hand and exposing themselves to an unreasonable safety risk." (*Id.* at ¶ 88) Courts have held that similar allegations have been sufficient to pass muster under Rule 9(b). *See Robinson*, 2015 WL 5334739, at *5. Therefore, plaintiffs have sufficiently alleged this element of specificity under Rule 9(b).

### 4. Intention that it should be acted upon

The FAC alleges that FCA US exchanged several internal emails that stated that "customers refuse to drive their vehicles any more before there is a clear solution for service." (*Id.* at ¶ 73) The FAC alleges that thereafter, FCA US "tasked its employees with drafting a Customer Satisfaction Notification (CSN) document," which stated that "Chrysler Group LLC is not aware of any accidents or injuries related to this issue (if true)." (*Id.* at ¶ 75-76)

Furthermore, plaintiffs allege that FCA US "continued to replace the defective valve stems with valve stems made of the same metal alloys that could not withstand corrosion in the first place" and point to several NHTSA complaints as support. (*Id.* at ¶ 81) Plaintiffs allege that FCA US knew "a reasonable person would consider the TPMS defect important and would either not purchase or lease a vehicle with the TPMS defect were the defect disclosed in advance or would pay substantially less for the vehicle." (*Id.* at ¶ 90) Therefore, plaintiffs have adequately alleged this element of specificity under Rule 9(b).

## 5. Plaintiff suffered an ascertainable loss as a result of the misrepresentation

The NJCFA does not define "ascertainable loss," though the New Jersey Supreme Court has defined the phrase as "either an out-of-pocket loss or a demonstration of loss in value that is quantifiable or measurable." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 606 (3d Cir. 2012) (quoting *Thiedemann v. Mercedes-Benz USA, LLC*, 872 A.2d 783, 792-93 (N.J. 2005)). The NJCFA "requires nothing more than that the consumer was misled into buying a product that was ultimately worth less to the consumer than the product he was promised." *Smajlaj*, 782 F. Supp. 2d at 99 (citing *Thiedemann*, 872 A.2d at 792; *Furst v. Einstein Moomjy, Inc.*, 860 A.2d 435, 442 (N.J. 2004)). There is no requirement that the received product be defective other than that it is not what was promised. *See Union Ink Co., Inc. v. AT & T Corp.*, 801 A.2d 361, 379 (N.J. Super. Ct. App. Div. 2002). Plaintiffs are "not required to allege the nature of the loss or present evidence of it at the motion to dismiss stage." *Alpizar-Fallas v. Favero*, 908 F.3d 910, 919 (3d Cir. 2018) (citing *Perkins v. DaimlerChrysler Corp.*, 890 A.2d 997, 1003-04 (N.J. Super. Ct. App. Div. 2006)).

The FAC alleges that plaintiffs "purchased Class Vehicles they otherwise would not have, paid more for Class Vehicles than they otherwise would, paid for TPMS diagnoses, repairs,

26

and replacements, towing, and/or rental cars, and are left with Class Vehicles of diminished value and utility." (D.I. 11 at ¶ 153) Therefore, plaintiffs have identified both out-of-pocket costs and loss in value sufficient to plead an ascertainable loss.

Consequently, I recommend that FCA US's motion to dismiss be denied-in-part as plaintiffs have adequately pleaded a claim for the violation of NJCFA under the heightened requirements of Rule 9(b).

### b. Counts II & III (Ohio Law)

In section (IV)(A)(i) *supra*, the court recommended granting-in-part FCA US's motion to dismiss based on the statute of limitations, but for the sake of completeness will address FCA US's alternative argument regarding the legal sufficiency of the FAC. In plaintiffs' second and third causes of action, plaintiffs allege that FCA US violated the OCSPA through deceptive and unfair conduct by knowingly concealing the "[TPMS] defect in the Class Vehicles, [and] failing to inform Plaintiff Lett and the other Ohio Class members of this defect." (D.I. 11 at ¶¶ 161, 177)

In Ohio, no binding precedent requires that OCSPA claims are subject to the heightened pleading requirements of Rule 9(b). *See McKinney v. Microsoft Corp.*, 2011 WL 13228141, at *14 (S.D. Ohio May 12, 2011); *Ferron v. Metareward, Inc.*, 698 F. Supp. 2d 992, 1000-01 (S.D. Ohio 2010). The *McKinney* court found it "would be unfair to require Plaintiff to have pled his OCSPA claim with particularity when there is no binding precedent on the issue and, for that matter, no consistent decision among courts within [Ohio]." *Id.* at *15.

Ohio Rev. Code § 1345.02(A) provides: "No supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction. Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the

27

transaction." Ohio Rev. Code Ann. § 1345.02(A). "Thus, this legislation prohibits a 'supplier' from committing 'unfair or deceptive acts' in a 'consumer transaction.' If one of these elements is not shown, then the claim under the OCSPA fails." *Ogle v. BAC Home Loans Servicing LP*, 924 F. Supp. 2d 902, 912 (S.D. Ohio 2013).

Here, the FAC alleges that FCA US was a "supplier" and that Plaintiff Lett and the Ohio Class members were "consumers" as defined in Ohio Rev. Code § 1345.01. (D.I. 11 at ¶¶ 157-158) Furthermore, plaintiffs have alleged an "unfair or deceptive act or practice" in a "consumer transaction"[12] by alleging that FCA US knew of the alleged defect and related safety hazards, yet concealed material information regarding the alleged defect while continuing to sell their vehicles. (*Id.* at ¶ 161) Plaintiffs support this allegation with sufficient pleaded facts that FCA US had knowledge of the alleged defect through FCA US's internal presentations, analyses of warranty claims, emails, lab reports, and testimony. (*Id.* at ¶¶ 27, 29, 31-35, 41-44) Plaintiffs have also sufficiently pleaded they did not know and could not reasonable detect the alleged defect without firsthand experience of the defect. (*Id.* at ¶¶ 82-84, 88, 91) Finally, the FAC alleges that FCA US internally discussed the defect, but made such information unavailable to plaintiffs. (*Id.* at ¶¶ 75-76, 82-85)

FCA US argues that under *Ferron v. EchoStar Satellite, LLC*, 727 F. Supp. 2d 647 (S.D. Ohio 2009), it had no duty to disclose "absent factual allegations showing that [it] had *exclusive* knowledge of some supposedly withheld material information." (D.I. 13 at 14) (emphasis in original) However, FCA US misreads *Ferron*. *Ferron* was decided on a motion for summary judgment and was largely decided on the fact that the plaintiff did not allege that he was

---

[12] A "consumer transaction" is defined as "a sale, lease, assignment, award by chance, or other transfer of an item of goods . . . to an individual." Ohio Rev. Code Ann. § 1345.01.

deceived and there was substantial evidence that he could not have been deceived. *Ferron*, 727 F. Supp. 2d at 655-56. This does not inform our analysis at the pleadings stage. Therefore, plaintiffs have adequately stated a claim under the OCSPA under Rule 8 standards, and I recommend that FCA US's motion be denied-in-part.

### c. Counts IV & V (Michigan Law)

In section (IV)(A)(ii) *supra*, the court recommended granting-in-part FCA US's motion to dismiss based on the statute of limitations, but for the sake of completeness will address FCA US's alternative argument regarding the legal sufficiency of the FAC. In plaintiffs' fourth and fifth causes of action, plaintiffs allege that FCA US violated the MCPA through deceptive and unfair trade practices by "knowingly misrepresent[ing] and intentionally omitt[ing] and conceal[ing] material information regarding the Class Vehicles by failing to disclose to Plaintiffs Canfield and Peck, as well as the Michigan Class Members, the known defects in the TPMS valve stem and the known risks associated therewith." (D.I. 11 at ¶ 193)

Although claims under the MPCA for fraud or mistake must state the circumstances with particularity, the MCPA "is much broader than the common law tort of fraud, covering not only deceptive practices but also unfair and unconscionable conduct." *Date v. Sony Elecs., Inc.*, 2010 WL 3702599, at *12 (E.D. Mich. Sept. 16, 2010). *See also Lipov v. Louisiana-Pacific Corp.*, 2013 WL 3805673, at *3 (W.D. Mich. July 22, 2013) (citing *HRL Land or Sea Yachts v. Travel Supreme, Inc.*, 2009 WL 427375, at *8 (W.D. Mich. Feb. 20, 2009); *Michels v. Monaco Coach Corp.*, 298 F. Supp. 2d 642, 650 (E.D. Mich. 2003); Fed. R. Civ. P. 9(b)). Therefore, plaintiffs "need not plead a claim under the MCPA with the particularity required by Federal Rule of Civil Procedure 9(b)." *Id.* at *13 (citing *Michels*, 298 F. Supp. 2d at 651). Here, plaintiffs have met pleading standards under Rule 8 by adequately pleading the alleged defect, FCA US's

knowledge of the alleged defect, and FCA US's concealment of this information. (D.I. 11 at ¶¶ 27, 29, 31-35, 41-44, 82-84, 91)

Here, plaintiffs have alleged that FCA US "intentionally omitted and concealed material information regarding the Class Vehicles by failing to disclose to Plaintiffs Canfield and Peck, as well as the Michigan Class Members, the known defects in the TPMS valve stem and the known risks associated therewith." (D.I. 11 at ¶ 193) As with plaintiffs' other statutory consumer protection act claims, plaintiffs have pleaded facts supporting their allegation that FCA US had knowledge of the alleged defect and related safety hazard, including FCA US's internal presentations, analyses of warranty claims, emails, lab reports, and testimony. (*Id.* at ¶¶ 27, 29, 31-35, 41-44) Additionally, plaintiffs have alleged that they did not know of the alleged defect and that it was not reasonably discoverable unless or until they experienced the defect firsthand. (*Id.* at ¶¶ 75-76, 82-85)

FCA US cites *Montgomery v. Kraft Foods Glob., Inc.*, 2014 WL 1875022, at *2 (W.D. Mich. May 9, 2014) to support its argument that Michigan imposes "no duty to disclose absent factual allegations showing that defendant had exclusive knowledge of some supposedly withheld material information." (D.I. 13 at 14-15) However, at the pleadings stage, plaintiffs' allegations are accepted as true and the court will not address the substantive merits of the cause of action pleaded. Therefore, plaintiffs have adequately stated a claim under the MCPA, and I recommend that FCA US's motion be denied-in-part.

### d. Counts VII & VIII (Massachusetts Law)

The court has recommended denying FCA US's motion to dismiss Counts VII and VIII as time-barred and will, therefore, consider FCA US's alternative arguments in support of their motion. In plaintiffs' seventh and eighth causes of action, plaintiffs allege that FCA US violated

the Massachusetts CPA through deceptive and unfair practices by failing to disclose a known defect with the TPMS unit. (D.I. 11 at ¶ 227, 236)

"A claim under Chapter 93A that involves fraud is subject to the heightened pleading requirement [under Fed. R. Civ. P. 9(b)]." *Martin v. Mead Johnson Nutrition Co.*, 2010 WL 3928707, at *3 (D. Mass. Sept. 30, 2010) (citing *Crisp Human Capital Ltd. v. Authoria Inc.*, 613 F. Supp. 2d 136, 139 (D. Mass. 2009)). However, to the extent that a Chapter 93A claim does not involve fraud, the claim is not subject to a heightened pleading requirement. *See Crisp Human Capital Ltd.*, 613 F. Supp. 2d at 139; *U.S. Funding, Inc. of Am. v. Bank of Boston Corp.*, 551 N.E.2d 922, 925 (Mass. App. Ct. 1990) ("While Mass. R. Civ. P. 9(b) requires specification of circumstances in 'averments of fraud, mistake, duress, or undue influence,' the concept of 'unfair or deceptive acts or practices' made actionable by [Mass. Gen. Laws ch. 93A] 'goes far beyond the scope of the common law action for fraud and deceit,' and does not necessarily require similar pleading specificity.") (internal citations omitted) (quoting *Slaney v. Westwood Auto, Inc.*, 322 N.E.2d 768, 779 (Mass. 1975)). Therefore, Rule 8's pleading requirements govern Counts VII and VIII.

Here, plaintiffs have met pleading standards under Rule 8 by adequately pleading the alleged defect, FCA US's knowledge of the alleged defect, and FCA US's concealment of this information. (D.I. 11 at ¶¶ 27, 29, 31-35, 41-44, 82-84, 91) The FAC alleges that FCA US "fail[ed] to disclose, at the point of sale or otherwise, that the TPMS valve stems in Class Vehicles are defective and pose a safety hazard." (*Id.* at ¶¶ 227, 236) Plaintiffs' allegations are not merely conclusory, as they have pleaded sufficient facts that plausibly state a claim under the Massachusetts CPA. Specifically, plaintiffs have pleaded that FCA US's internal presentations, analyses of warranty claims, emails, lab reports, and testimony containing information regarding

31

the alleged defect plausibly allege FCA US's knowledge of the defect. (*Id.* at ¶¶ 27, 29, 31-35, 41-44) Additionally, plaintiffs have alleged that they did not know of the alleged defect and that it could not be reasonably discoverable unless or until they experienced the defect firsthand. (*Id.* at ¶¶ 75-76, 82-85)

FCA US argues that a duty of disclosure is "imposed only when there is a special relationship such as a fiduciary relationship, or when an earlier statement was misleading at the time it was made." (D.I. 13 at 14) FCA US cites *Smith v. Zipcar, Inc.*, 125 F. Supp. 3d 340, 344 (D. Mass. 2015) and *Howarth v. Hunneman & Co.*, 761 N.E.2d 1013 (Table) (Mass. App. Ct. 2002) to support this argument. (*Id.*) However, neither *Smith* nor *Howarth* stand for this proposition. First, *Smith* does not address a Chapter 93A claim. *Smith*, 125 F. Supp. 3d at 342 n.1. In *Howarth*, the court ruled that the Chapter 93A claims were barred by a four-year statute of limitations and stated that the defendant had no duty to disclose a latent defect of the property because no special or fiduciary relationship existed between the parties. *Id.*

However, *Howarth* appears to be in a minority of Massachusetts cases that conclude that a lack of a duty to disclose is fatal to a Chapter 93A claim at this stage. The District Court of Massachusetts, in *Speakman v. Allmerica Fin. Life Ins.*, 367 F. Supp. 2d 122 (D. Mass. 2005), concluded that:

> Indeed, it may well prove to be the case that defendants made appropriate disclosures to the plaintiffs, or that they had no duty to disclose, or that the risks were obvious and voluntarily assumed. The Court, however, cannot make those determinations solely upon the pleadings, without any factual record. Furthermore, causes of action under Chapter 93A are notoriously amorphous, and not necessarily tied to common law rights of action. Plaintiffs have sufficiently 'raised the specter of unethical conduct' to defeat a motion to dismiss based on defendants' alleged withholding of material information.

*Speakman*, 367 F. Supp. 2d at 142 (citing *Bradley v. Dean Witter Realty, Inc.*, 967 F. Supp. 19, 29 (D. Mass. 1997)). The First Circuit echoes this conclusion: "Massachusetts case law

suggests that one difference between a fraud claim and the more liberal 93A is allowance of a cause of action even in the absence of a duty to disclose." *V.S.H. Realty, Inc. v. Texaco, Inc.*, 757 F.2d 411, 417 (1st Cir. 1985). Therefore, plaintiffs have adequately stated a claim under the Massachusetts CPA, and I recommend FCA US's motion to dismiss be denied-in-part.

### ii. Implied Warranty Claims

Having previously determined in sections (IV)(A)(iv)(a)-(b) *supra* that plaintiffs' implied warranty claims are timely, the court now analyzes the legal sufficiency of plaintiffs' implied warranty claims. FCA US argues that the implied warranty claims under Michigan and Massachusetts law in Counts VI and IX respectively are legally insufficient for three reasons: (1) plaintiffs did not provide pre-suit notice; (2) plaintiffs failed to allege the implied warranty was still in effect when Canfield and Peck first encountered any problem with a valve stem; and (3) plaintiffs failed to allege that the vehicles owned by Canfield, Peck, and Taylor are unfit for the purpose of transportation as is required for implied warranty claims. (D.I. 13 at 16-17)

### a. Failure to provide pre-suit notice

First, plaintiffs argue that they have set forth allegations of seeking repeated repairs from authorized dealerships, which is sufficient to plead notice. (D.I. 17 at 14-15) Under Michigan law, "[a] buyer who seeks to recover damages for a breach of implied warranty must provide notice to the seller within a reasonable time after he discovers the breach or the buyer cannot recover." *Zanger v. Gulf Stream Coach, Inc.*, 2006 WL 1494952, at *4 (E.D. Mich. May 25, 2006) (citing Mich. Comp. Laws §§ 440.2607(3)(a), 440.2714). "Under Massachusetts law, a plaintiff must give reasonably prompt notice of a breach of warranty claim to the potential defendant. If plaintiff does not give prompt notice and defendant is thereby prejudiced, then 'the warranty claim is barred even if it is brought within the statute of limitations.'" *Maga v.*

*Hennessy Indus., Inc.*, 2014 WL 10051399, at *16 (D. Mass. Dec. 1, 2014) (internal citations omitted). Plaintiffs allege in the FAC that FCA US was provided notice of the alleged defect by acquiring knowledge of the defect through various complaints regarding the TPMS valve stem. (D.I. 11 at ¶¶ 97-98, 113, 128-130, 221) The court cannot, at the pleadings stage, make a determination as to the sufficiency of notice and must view all factual allegations in the FAC as true. Therefore, I recommend rejecting FCA US's argument on this first point.

### b. Whether implied warranty was still in effect when plaintiffs first encountered a problem with a valve stem

Second, FCA US argues that Canfield and Peck's implied warranty claims under Michigan law should be dismissed because there are no allegations showing that the implied warranty was still in effect when they first encountered a problem with a valve stem. (D.I. 13 at 16) FCA US notes that the Basic Limited Warranty lasted the shorter of three years or 36,000 miles and that all implied warranties were limited to the time periods covered by the express written warranties. (*Id.*) Furthermore, FCA US asserts that neither Canfield nor Peck allege that his vehicle experienced valve stem failure within the prescribed amount of time or miles. (*Id.*) At the pleadings stage, the court must accept as true all factual allegations in the FAC. Here, plaintiffs have adequately pleaded breach of implied warranty under both Michigan and Massachusetts law by alleging that the TPMS valve stems were defective due to their susceptibility to corrode and result in tire air outs. (D.I. 11 at ¶¶ 220-221, 248-249) Therefore, I recommend rejecting FCA US's argument on this point.

Plaintiffs argue that under Michigan law, the language of FCA US's warranty does not comport with the conspicuousness requirements of Mich. Comp. Laws Ann. § 440.2316. (D.I. 17 at 15) (citing D.I. 13, Ex. A at 4) Specifically, plaintiffs assert that FCA US's warranty limitation language does not mention the word "merchantability" and is not conspicuous. (D.I.

17 at 15) (citing D.I. 13, Ex. A at 4) *See also* Mich. Comp. Laws Ann. § 440.2316 ("to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous."). At the pleadings stage, it is improper for the court to address the merits of the warranty claims. The only issue is whether plaintiffs have sufficiently alleged breach of FCA US's warranty, and therefore I recommend denying-in-part FCA US's motion on Count VI and IX.

### c. Unfit for transportation

Finally, plaintiffs argue that they have properly pleaded a safety issue showing that the vehicles are not merchantable. (D.I. 17 at 16) Plaintiffs quote the court in *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 280 F. Supp. 3d 975 (E.D. Mich. 2017): "[i]t is well recognized, both as a matter of law and common sense, that 'a merchantable vehicle under the statute requires more than the mere capability of just getting from point A to point B.'" *In re FCA US LLC*, 280 F. Supp. 3d at 1015 (quoting *Brand v. Hyundai Motor Am.*, 226 Cal. App. 4th 1538, 1546 (Cal. Ct. App. 2014)). FCA US argues that this argument is undercut by the fact that plaintiffs have continued to use their vehicles for tens of thousands of miles over the course of the last several years. (D.I. 18 at 7-8) However, the court cannot, at the pleadings stage, make determinations regarding the merchantability of the Class Vehicles. The court must accept as true all factual allegations set forth in the FAC. The FAC adequately pleaded a claim for breach of implied warranty of merchantability. (D.I. 11 at ¶¶ 220-221) Therefore, I recommend denying-in-part FCA US's motion to dismiss with regards to Counts VI and IX.

### iii. Express Warranty Claim

In section (IV)(A)(iv)(c) *supra*, the court recommended granting-in-part FCA US's motion to dismiss based on the statute of limitations, but for the sake of completeness will

address FCA US's alternative argument regarding the legal sufficiency of the FAC. In addition to being time-barred, FCA US also moves to dismiss Count X for three additional reasons: (1) the Basic Limited Warranty underlying the express warranty claim does not cover design defects; (2) no plaintiff pleaded that he or she ever sought, and was denied, a repair while any applicable warranty was in effect; and (3) plaintiffs failed to give FCA US notice of any alleged breach. (D.I. 13 at 17-19)

### a. Basic Limited Warranty

First, FCA US argues that the Basic Limited Warranty covers only defects in "material, workmanship or factory preparation" (D.I. 13 at 17) (citing D.I. 13, Ex. A at 5), whereas plaintiffs' defect theory is that the design of the vehicles' valve stems and nuts incorporated a "metal alloy" that is subject to corrosion." (D.I. 11 at ¶¶ 1, 4, 79) However, "[w]hether these alleged defects arose from a faulty design, faulty materials or faulty workmanship cannot be ascertained absent discovery, since any information concerning the true origin of the alleged defect is within the sole possession of the defendant." *Haag v. Hyundai Motor America*, 969 F. Supp. 2d 313, 316 (W.D.N.Y. 2013) Consequently, "the nature of the warranty claim [is] 'a proper subject for a motion for summary judgment, or for trial, not for [a] motion to dismiss.'" *Alin v. American Honda Motor Co., Inc.*, 2010 WL 1372308, at *5 (D.N.J. Mar. 31, 2010). Therefore, I recommend rejecting FCA US's argument on this first point.

### b. Failure to provide pre-suit notice

Second, FCA US argues that plaintiffs' failure to give notice of any alleged breach deprived FCA US of the opportunity to investigate their allegations and offer a cure if warranted prior to the filing of the case at bar. (D.I. 13 at 19) Plaintiffs counter that pre-suit notice is not required when the action is brought against a remote manufacturer who was not the immediate

seller of the defective product. (D.I. 17 at 18) Furthermore, plaintiffs argue, even if such notice

is required, the filing of a complaint satisfies the requirement under New Jersey, Ohio, and

Michigan law. *See id.* ("the filing of Plaintiff's Complaint satisfied this requirement" under New

Jersey law); *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 975 (N.D. Cal. 2014)

(analyzing Ohio law); *Ashley v. Goodyear Tire & Rubber Co.*, 635 F.2d 571, 573 (6th Cir. 1980)

(analyzing Michigan law). Plaintiffs also contend that the notice requirements for their warranty

claims have been satisfied by FCA US's prior knowledge of the defect. (D.I. 17 at 18-19) As

the court has previously stated in section (IV)(B)(ii), the court cannot make a determination

regarding the sufficiency of notice at the pleadings stage. The court must accept all factual

allegations set forth in the FAC as true. Here, the FAC alleges that FCA US had notice through

its knowledge of the defect. (D.I. 11 at ¶¶ 260-261) Therefore, I recommend rejecting FCA

US's argument on this point.

### c. Seeking repair within the warranty period

Third, FCA US contends that no plaintiff sought or was denied a repair while any

applicable warranty was in effect. FCA US points to admissions in the FAC that Spratley and

Stebbins purchased their vehicles after the 3-year/36,000 mile warranty period already expired

(D.I. 11 at ¶¶ 114, 119), and that other plaintiffs' vehicles did not require any repair during the

applicable warranty periods (*Id.* at ¶¶ 93-131). Where, as here, a "warranty had already expired

by the time the [product] failed," there is an "insurmountable bar to moving forward with [an]

express warranty claim." *Huffman v. Electrolux Home Prods., Inc.*, 2013 WL 5591939, at *2

(N.D. Ohio Sept. 30, 2013); *see also Canal Elec. Co. v. Westinghouse Elec. Co.*, 973 F.2d 988,

993 (1st Cir. 1992) ("[C]ase law almost uniformly holds that time-limited warranties do not

protect buyers against hidden defects – defects that may exist before, but typically are not

discovered until after, the expiration of the warranty period."); *Alban*, 2011 WL 900114, at *9 (dismissing plaintiff's breach of warranty claim where the defect did not arise until after the warranty expired).

FCA US's arguments would require the court to address the merits and scope of the express warranty, which is inappropriate at the pleadings stage. At the pleadings stage, the court must accept as true all factual allegations in the FAC. Here, plaintiffs have adequately pleaded breach of express warranty. Therefore, I recommend denying-in-part FCA US's motion to dismiss with regards to Count X.

## C.  Injunctive Relief

In the FAC, plaintiffs request, *inter alia*, an order requiring "Chrysler to adequately disclose and remediate the TPMS defect and enjoining Chrysler from incorporating the defective TPMS into its vehicles in the future." (D.I. 11 at 93)

FCA US argues that, to the extent that any of plaintiffs' claims survive, plaintiffs' request that the court order injunctive relief requiring FCA US to "disclose and remediate" the alleged corrosion defect must be dismissed. (D.I. 13 at 19) FCA US argues that this is effectively asking the court to order FCA US to conduct a recall, which is preempted by the NHTSA's exclusive jurisdiction over motor vehicle recalls and what a manufacturer must do in the area of "safety" in order to sell its vehicles. (*Id.*)

Plaintiffs argue that plaintiffs' petition for an order requiring FCA US to "disclose and remediate" is not a cause of action subject to dismissal pursuant to Rule 12(b)(6), but rather is a request for a remedy. (D.I. 17 at 19) Plaintiffs further argue that to the extent FCA US is moving to strike plaintiffs' equitable relief, this is improper, as Rule 12(f) does not authorize specific relief to be stricken because it is precluded as a matter of law. (*Id.*) Plaintiffs aver that

38

FCA US's preemption argument fails because its argument "that the requested relief might conflict with some action NHTSA might take in the future" is far from sufficient to satisfy FCA US's burden of justifying preemption. (*Id.*) Plaintiffs assert that their claims, which arise under state law, not the NHTSA, are therefore within the "conventional competence of the courts." (*Id.* at 20) (quoting *Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 305 (1976)).

FCA US attempts to draw parallels between the instant case and the injunctive relief sought *Granillo v. FCA US LLC*, 2016 WL 9405772, at *18 (D.N.J. Aug. 29, 2016). (D.I. 18 at 10) In *Granillo*, the plaintiffs sought injunctive relief in the form of a recall specifically pursuant to "applicable NHSTA guidelines," and the court denied the requested relief "as an improper intrusion into federal governmental operations by state law" because "[a] recall of motor vehicles cannot be conducted pursuant to the NHTSA's guidelines without the involvement of, and action being taken by, the NHTSA." *Id.* at *19-20.

Here, however, plaintiffs are asking for an order requiring FCA US to "adequately disclose and remediate the TPMS defect" and "enjoin[ ] Chrysler from incorporating the defective TPMS into its vehicles in the future." (D.I. 11 at 93) There is no pending action under NHTSA and it would be speculative for the court to assume what, if any, action might be taken in the future. Plaintiffs have sufficiently pleaded grounds for injunctive relief and do not invoke NHTSA guidelines in their request. (*Id.*) Therefore, the court recommends denying-in-part FCA US's motion to dismiss with respect to plaintiffs' request for injunctive relief.

## V.    CONCLUSION

For the foregoing reasons, and as addressed in the chart *infra*, the court recommends granting-in-part and denying-in-part FCA US's motion to dismiss pursuant to Rule 12(b)(6). (D.I. 12)

| Count | Motion to Dismiss |
|---|---|
| Count I (New Jersey Consumer Fraud Act) | DENY |
| Count II (Ohio Consumer Sales Practices Act) | GRANT |
| Count III (Ohio Consumer Sales Practices Act) | GRANT |
| Count IV (Michigan Consumer Protection Act) | GRANT |
| Count V (Michigan Consumer Protection Act) | GRANT |
| Count VI (Implied Warranty under Michigan law) | DENY |
| Count VII (Massachusetts Consumer Protection Act) | DENY |
| Count VIII (Massachusetts Consumer Protection Act) | DENY |
| Count IX (Implied Warranty under Massachusetts law) | DENY |
| Count X (Express Warranty) | GRANT |

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1.  The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation.  Fed. R. Civ. P. 72(b)(2).  The objection and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court.  *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: January  8  , 2019

Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE