IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TIMOTHY CANFIELD, ANDREW CATTANO, JAMES LETT, DENNIS PECK, STEVEN SPRATLEY, SUSAN STEBBINS, and YVETTE TAYLOR, on behalf of themselves and all others similarly situated,<br><br>   Plaintiffs.<br><br>   v.<br><br>FCA US LLC,<br><br>   Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  C.A. No 17-1789 (MN)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION

Jeffrey S. Goddess, P. Bradford deLeeuw, ROSENTHAL, MONHAIT & GODDESS, P.A., Wilmington, DE; Nicholas A. Migliaccio, Jason S. Rathod, MIGLIACCIO & RATHOD LLP, Washington, DC – attorneys for Plaintiff

Kenneth L. Dorsney, MORRIS JAMES LLP, Wilmington, DE; Kathy A. Wisniewski, Stephen A. D'Aunoy, THOMPSON COBURN LLP, St. Louis, MO – attorneys for Defendants

March 8, 2019
Wilmington, DE

NOREIKA, U.S. DISTRICT JUDGE:

Presently before the Court are the objections of Defendant FCA US LLC ("Defendant" or "FCA") (D.I. 25, "the Objections") to Magistrate Judge Fallon's Report and Recommendation (D.I. 21, "the Report"). The Report recommended granting-in-part and denying-in-part Defendant's motion to dismiss (D.I. 12) the putative class action First Amended Complaint (D.I. 11) ("the Amended Complaint") filed by Plaintiffs. The Court has reviewed the Report, Defendant's objections, and Plaintiffs' responses thereto (D.I. 29). The Court considers *de novo* the objected to portions of the Report and the relevant portions of Defendant's motion to dismiss and Plaintiffs' response to the motion.[1] (*See* D.I. 12, 13, 17, 18). For the reasons set forth below, Defendant's objections are OVERRULED, the Report is ADOPTED and Defendant's motion to dismiss will be GRANTED-IN-PART and DENIED-IN-PART.

I. **BACKGROUND**

On October 12, 2017, Plaintiffs Timothy Canfield, Andrew Cattano, James Lett, Dennis Peck, Steven Spratley, Susan Stebbins, and Yvette Taylor (collectively, "Plaintiffs") filed a class action complaint against FCA in the Superior Court of Delaware.[2] (D.I. 1, Ex. A). On December 12, 2017, FCA removed the case to this Court pursuant to 28 U.S.C. §§ 1332(d)(2),

---

[1] When objections are timely filed to a magistrate judge's report and recommendation, the "district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(C) (2008). The court "may accept, reject, or modify" the magistrate judge's recommended disposition. *Id.*

[2] Before initiating this action, Plaintiffs filed a complaint in the United States District Court for the Southern District of New York ("SDNY") against the same Defendant. (D.I. 17 at 2). That complaint was transferred, *sua sponte*, from SDNY to the United States District Court of the Northern District of New York ("NDNY"). (*Id.*). On September 12, 2017, the NDNY court dismissed each of the currently-named Plaintiffs' claims for a lack of personal jurisdiction. *See Spratley v. FCA US*, No. 17-62 (MAD), 2017 WL 4023348 (N.D.N.Y. Sept. 12, 2017).

1441, and 1446 (D.I. 1) and subsequently filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) on January 18, 2018 (D.I. 6). On February 1, 2018, Plaintiffs filed the Amended Complaint. (D.I. 11).

The Amended Complaint alleges that 2010 Jeep Liberty, Chrysler Town & Country, and Dodge Journey vehicles, manufactured by FCA[3] after June 10, 2009 ("Class Vehicles"),[4] are equipped with a defective component – a "copper-bearing aluminum 2000 series metal alloy ("AL2000") valve stem and nut on vehicles equipped with a tire pressure monitoring system ("TPMS")." (D.I. 11 ¶¶ 1, 8, 24). Plaintiffs allege that this defective component is subject to corrosion and valve stem failure when "exposed to corrosive elements like road salt." (*Id.* ¶ 4). Moreover, the Amended Complaint asserts that "[w]hen the valve stem fails, air can be rapidly released from the tire without warning (an "air-out") and at any speed, a condition akin to a tire blow out." (*Id.*). Plaintiffs allege that FCA "actively concealed and/or failed to notify the public of the existence and nature of said defect or of the possible safety issues presented by the defect." (*Id.* ¶ 11).

As the Report summarizes, the Amended Complaint characterizes each of the Plaintiffs as follows:

> i. **Canfield:** In January 2013, Canfield purchased a used 2010 Dodge Journey with 15,000 miles from an undisclosed dealership in Caro, Michigan. (*Id.* at ¶ 93). In December 2015, at an undisclosed mileage, Canfield took his vehicle to a Walmart to have a valve stem

---

[3] Defendant FCA is a Delaware limited liability company headquartered in Auburn Hills, Michigan, and the U.S. subsidiary of Italian automaker Fiat S.p.A. (D.I. 11 ¶ 20). FCA "designs, manufactures and sells automobiles throughout the United States, including in the State of Delaware, under the Chrysler brand name and through its Dodge and Jeep brands." (*Id.*)

[4] Each of the vehicles came with a 3-year/36,000-mile Basic Limited Warranty, a 3-year/unlimited-mileage Corrosion Warranty, a 5-year/100,000 mile Outer-Body Corrosion Warranty, a 5-year/100,000 Powertrain Warranty, and an 8-year/100,000-mile Emissions Warrant. (D.I. 13, Ex. A).

replaced. (*Id.* at ¶ 97). In January 2016, at an undisclosed mileage, he took his vehicle to a Belle Tire to have a second valve stem replaced. (*Id.* at ¶ 98). In both instances, he sought a repair because the "TPMS light flashed on the dashboard," alerting him that a tire had low pressure, "before a nearly instantaneous air-out of one of his tires." (*Id.* at ¶ 96).

ii. **Cattano:** In 2010, Cattano purchased a 2010 Jeep Liberty with undisclosed miles from a Chrysler dealership in Summit, New Jersey. (*Id.* at ¶ 99). On May 23, 2015, Cattano was driving his vehicle on the highway when the TPMS light came on. (*Id.* at ¶ 102). Almost instantaneously, his right rear tire had an air-out. (*Id.*). Cattano momentarily lost control of his car, but successfully pulled his vehicle over. (*Id.*). He observed that the TPMS module was missing, leaving a hole in the tire's sidewall. (*Id.*). Eventually, on an undisclosed date and at an undisclosed mileage, Cattano took his vehicle to an undisclosed mechanic who recommended replacing and then replaced four valve stems on his vehicle because the TPMS valve stems on his other three tires had begun to crack. (*Id.* at ¶ 103).

iii. **Lett:** In March 2010, Lett purchased a new 2010 Chrysler Town & Country with undisclosed miles from a Chrysler dealership in Avon Lake, Ohio. (*Id.* at ¶ 105). In June 2014, Lett's wife was driving the vehicle when a tire suffered an air-out at an undisclosed mileage. (*Id.* at ¶ 107). Lett's wife initially lost control of the vehicle, but successfully pulled the vehicle over. (*Id.*). Upon inspecting the blown out tire, Lett observed a corroded valve stem, which Lett had replaced on an undisclosed date and at an undisclosed mileage. (*Id.*). In the summer of 2015, Lett replaced four valve stems on his vehicle after observing that three were cracked and one was corroded. (*Id.* at ¶ 108).

iv. **Peck:** In approximately June 2010, Peck purchased a new 2010 Dodge Journey with undisclosed miles from a Chrysler dealership in Clinton, Michigan. (*Id.* at ¶ 109). On March 3, 2015, at an undisclosed mileage, Peck was driving when he heard a loud noise and saw that the vehicle's TPMS warning light had come on. (*Id.* at ¶ 112). Initially, Peck "felt the car pull to the left," but he successfully pulled the vehicle to the side of the road. (*Id.*). He then observed that the TPMS module was missing and left a hole in the tire. (*Id.*) As a result, Peck had a tire and TPMS valve stem replaced. (*Id.* at ¶ 113)

v. **Spratley:** In an undisclosed month in 2012, Spratley purchased a certified, pre-owned 2010 Chrysler Town & Country

> with "about 65,000 miles" from a Chrysler dealership in Jersey City, New Jersey. (*Id.* at ¶ 114). In early 2015, at an undisclosed mileage, Spratley took his vehicle to an undisclosed mechanic after experiencing a leak in the tire. (*Id.* at ¶ 117). The mechanic noted two cracked valve stems, which Spratley had replaced. (*Id.* at ¶¶ 117-118).
>
> vi. **Stebbins:** In August 2012, Stebbins purchased a used 2010 Dodge Journey with 37,000 miles from an undisclosed seller in New Jersey. (*Id.* at ¶ 119). On November 23, 2014, at an undisclosed mileage, Stebbins saw the vehicle's TPMS warning light come on and experienced an air-out of a tire. (*Id.* at ¶ 122). She momentarily lost control of her vehicle, but successfully pulled the vehicle over. (*Id.*). Stebbins observed that the TPMS module was missing and left a hole in her tire. (*Id.*). Stebbins's car was serviced at International Tire and Parts, where she had two tires and three TPMS valve stems replaced. (*Id. at* ¶ 123).
>
> vii. **Taylor:** In November 2010, Taylor purchased a used 2010 Dodge Grand Caravan with undisclosed miles from a third-party in Holyoke, Massachusetts. (*Id.* at ¶ 124). On December 8, 2014, Taylor paid $140.43 for her mechanic at a D.E. Bourque & Sons, Inc. Automotive Service & Sales to investigate her under-inflated tire and replace her leaking TPMS. (*Id.* at ¶ 128). She returned to her mechanic on February 5, 2015 and paid $134.49 to investigate another under-inflated tire and replace another TPMS. (*Id.* at ¶ 129). She visited her mechanic again on April 27, 2016 and paid $259.76 for her mechanic to remove and replace TPMS on her rear passenger side and front driver side tires. (*Id.* at ¶ 130). On all three visits, Taylor's mechanic informed her that the TPMS was corroded and causing her tire to lose air. (*Id.* at ¶¶ 128-130).

(D.I. 21 at 3-5) (citing D.I. 11).

On February 15, 2018, FCA filed its current motion to dismiss pursuant to Rule 12(b)(6). (D.I. 12). Plaintiffs opposed the motion and Magistrate Judge Fallon heard oral argument on May 8, 2018. Magistrate Judge Fallon produced the Report on January 8, 2019. (D.I. 21). On January 22, 2019, FCA filed objections to certain portions of the Report. (D.I. 25). Plaintiffs timely submitted a response to Defendant's objections. (D.I. 29). Plaintiffs have not objected to any of the recommendations in the Report.

## II. LEGAL STANDARD

A complaint must contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-55 (2007) (citing *Conley v. Gibson* 355 U.S. 41, 47 (1957); Fed. R. Civ. P. 8(a)(2)). When dismissal is sought under Rule 12(b)(6), the court conducts a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the court separates the factual and legal elements of a claim, accepting "all of the complaint's well-pleaded facts as true, but [disregarding] any legal conclusions." *Id.* at 210-11. Second, the court determines "whether the facts alleged in the complaint are sufficient to show . . . a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). A claim is facially plausible if "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* Further, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotations omitted).

"The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)). A court may grant a motion to dismiss only if, after "accepting all well pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, [the] plaintiff is not entitled to relief." *Id.* "In deciding a Rule 12(b)(6) motion, a court must consider *only* the

complaint, exhibits attached to the complaint, matters of public record, as well as undisputed authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (emphasis added).

## III. DISCUSSION

### A. Count I (NJCFA)

The Report recommended that the motion to dismiss be denied as to Count I because "plaintiffs have adequately pleaded a claim for the violation of [the New Jersey Consumer Fraud Act ("NJCFA")] under the heightened requirements of Rule 9(b)." (D.I. 21 at 27). Defendant objects that the Report's finding "is erroneous as the [Amended Complaint] is devoid of facts sufficient to satisfy the clear requirement set forth in New Jersey law that a plaintiff must allege facts showing that a defendant 'knew *with certainty* that the product at issue or one of its components was going to fail.'" (D.I. 25 at 5) (internal citation omitted) (emphasis in original). Defendant also objects that "a plaintiff cannot maintain an action under NJCFA when her allegation is premised upon an alleged substandard or defective part *that outperforms the warranty provided*."[5] (*Id.* at 6 (internal quotations and citation omitted) (emphasis in original)).

Count I alleges that Defendant violated the NJCFA, N.J. Stat. Ann. § 56:8-1, *et seq.*, when it "knowingly misrepresented and intentionally omitted and concealed material information regarding the Class Vehicles to Plaintiffs Cattano, Spratley and Stebbins, along with the New Jersey Class Members, the known defects in the TPMS valve stem and the known risks associated

---

[5] Despite Defendant's certification that its objections do not raise new legal or factual arguments, the "outperformance" raised in the objections was not previously raised. Indeed, the Court notes that the current objection relies on *Glass v. BMW of N. Am., LLC*, 2011 WL 6887721 (D.N.J. Dec. 29, 2011), which was cited only in passing and for a different proposition in the original briefing. Defendant's decision to spend a full page of its objections outlining a new argument is inappropriate.

6

therewith." (D.I. 11 ¶ 149(a)). It further alleges that "Defendant failed to disclose the defects . . . either through warnings or recall notices, and/or actively concealed from them that the Class Vehicles' TPMS valve stems were defective, even though the company knew of such defects: (1) at the time of manufacturing, when it created the valve stems out of metal alloys that cannot sufficiently resist corrosion . . . ." (*Id.* ¶ 149(b)). Plaintiffs also allege that, "based on [analyses and failure rate predictions] and, upon information and belief, other internal studies and investigations, Defendant knew with certainty that the valve stems on the vehicles were going to fail." (*Id.* ¶ 149(b), (c)).

The NJCFA prohibits "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice[.]" N.J. Stat. Ann. § 56:8-2. To state a claim under the NJCFA, a plaintiff must plead sufficient factual support to demonstrate: "(1) unlawful conduct; (2) an ascertainable loss; and (3) a causal relationship between the unlawful conduct and the ascertainable loss." *Francis E. Parker Mem'l Home, Inc. v. Georgia-Pac. LLC*, 945 F. Supp. 2d 543, 558 (D.N.J. 2013) (citing *International Union of Operating Engineers Local No. 68 Welfare Fund v. Merck & Co.*, 192 N.J. 372, 389-391, 929 A.2d 1076 (2007)). Unlawful conduct can be established by showing affirmative acts, knowing omissions, or violation of regulations promulgated under the Act. *Id.* A plaintiff need not show actual reliance on a prohibited act but must "demonstrate that they have sustained an ascertainable loss." *Id.*

7

"The heightened pleading standard expressed under Federal Rule of Civil Procedure Rule 9(b) applies to Plaintiff's NJCFA claim." *MZL Capital Holdings, Inc. v. TD Bank, N.A.*, No. 14-5772 (RMB), 2015 WL 4914695, at *5 (D.N.J. Aug. 18, 2015) (citing *Dewey v. Volkswagen AG*, 558 F.Supp.2d 505, 526 (D.N.J.2008)). To meet the standards of Rule 9(b), Plaintiffs must plead with particularity the circumstances constituting the fraud, which "can be accomplished by pleading the date, time, and place of the fraud or otherwise injecting precision or some measure of substantiation into the allegations." *Id.* (internal quotations and citations omitted). Defendant argues that the Amended Complaint fails to plead an affirmative representation or an omission with particularity and thus implicitly contends that Plaintiffs cannot meet the unlawful conduct prong of the test. (D.I. 13 at 12-13). In response, Plaintiffs contend that they only seek to "proceed on a material omissions theory with respect to stating a claim." (D.I. 17 at 10). Thus, the Court does not consider the arguments regarding affirmative representations.

To present a claim based on omission, Plaintiffs must plead that "defendant (1) knowingly concealed (2) a material fact, (3) with the intention that the consumer rely upon the concealment." *Francis E. Parker*, 954 F. Supp. 2d at 559. Here, the Amended Complaint alleges that, based on its own internal studies and investigations, "Defendant knew with certainty that the valve stems on the vehicles were going to fail" and concealed this information knowing the "valve stem defect would not be revealed to the consumer until after coverage expired." (D.I. 11 ¶ 149). Defendant argues that these allegations are insufficient because Plaintiffs have failed to show FCA had a duty to disclose because Plaintiffs do not allege FCA "knew ***with certainty*** that the product at issue or one of its components was going to fail." (D.I. 25 at 5 (citing *Coba v. Ford Motor Co.*, 2017 WL 3332264, at *3 (D.N.J. Aug. 4, 2017) (emphasis in original)). Moreover, Defendant objects that "there are no allegations that FCA US knew that 'substantially all' of the tire valve stems would

8

fail." (D.I. 25 at 7). The Court, however, notes that Paragraph 39 states, in pertinent part, ***[FCA] predicted up to a 100 percent failure rate within five years.*"** (D.I. 11 ¶ 39 (emphasis added)). That appears to be a clear articulation that Defendant knew that the valves would fail. Beyond alleging sufficient factual support to show unlawful conduct, Plaintiffs have also sufficiently pleaded an ascertainable loss and a connection between that loss and the unlawful conduct. The Amended Complaint alleges "[a]s a direct and proximate result of these unconscionable, unfair, and deceptive acts or practices, [Plaintiffs] have been damaged because: they purchased Class Vehicles they otherwise would not have, paid more for Class Vehicles than they otherwise would, paid for TPMS diagnoses, repairs, and replacements, towing, and/or rental cars, and are left with Class Vehicles of diminished value and utility because of the defect." (*Id.* ¶ 153). An "ascertainable loss" has been defined as "either an out-of-pocket loss or a demonstration of loss in value that is quantifiable or measurable." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 606 (3d Cir. 2012) (quoting *Thiedemann v. Mercedes-Benz USA, LLC*, 872 A.2d 783, 792-93 (N.J. 2005)). The Third Circuit has previously stated that a plaintiff is "not required to allege the nature of the loss or present evidence of it at the motion to dismiss stage." *Alpizar-Falla v. Favero*, 908 F.3d 910, 919 (3d Cir. 2018) (citing *Perkins v. DaimlerCrysler Corp.*, 890 A.2d 997, 1003-04 (N.J. Super. Ct. App. Div. 2006)). Here, Plaintiffs have pleaded sufficient factual support to show out-of-pocket losses related to the alleged concealment of deficiencies in the valve stems and have adequately pleaded a plausible claim of a violation of the NJCFA by Defendant.

### B. Counts IV & V as to Plaintiff Canfield

The Report recommends that the Court deny the motion to dismiss as it pertains to Plaintiff Canfield's Michigan law claims under Counts IV and V, finding that "plaintiffs have adequately stated a claim under the [Michigan Consumer Protection Act ("MCPA")]." (D.I. 21 at 30).

9

Defendant objects that "FCA US could not have had 'exclusive' knowledge of a defect that was publicly known," and "dismissal of the MCPA is warranted based on the lack of duty to disclose." (D.I. 25 at 8). Defendant's objection is unpersuasive.

The MCPA provides that "[u]nfair, unconscionable, or deceptive methods, acts or practices in the conduct of trade or commerce are unlawful . . . ," and proceeds to list thirty-three examples of such methods, acts, or practices. Mich. Comp. Law. Ann. § 445.903(1). Subsection (1)(s) identifies "[f]ailing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer," as unlawful. *Id.* Courts have routinely held that "[t]he MCPA is broader than common law torts of fraud inasmuch as it prohibits 'not only' deceptive business practices but also those which are unfair and unconscionable.'" *Game On Ventures, Inc. v. General RV Center, Inc.*, 587 F. Supp. 2d 831, 839 (E.D. Mich. 2008) (internal quotations omitted) (citing *Mayhall v. A.H. Pond Co.*, 341 N.W.2d 268 (Mich. App. 1983)). For this reason, courts have found that a plaintiff "need not necessarily plead a claim under the MCPA with the particularity required by Federal Rule of Civil Procedure 9(b)" *See e.g.*, *Date v. Sony Elecs., Inc.*, No. 07-15474, 2010 WL 3702599, at *13 (E.D. Mich. Sept. 16, 2010).

Here, Counts IV and V of the Amended Complaint allege that Defendant "knowingly misrepresented and intentionally omitted and concealed material information regarding the Class Vehicles by failing to disclose . . . the known defects in the TPMS valve stem and the known risks associated therewith," (D.I. 11 ¶¶ 193, 206), the omission led Plaintiffs to "purchase[] Class Vehicles they otherwise would not have purchased, [and] pa[y] more for Class Vehicles than they otherwise would have," (*Id.* ¶¶ 197, 210), and Plaintiffs "could not discover the defect themselves before suffering their injuries," (*Id.* ¶¶ 196, 209). Additionally, as discussed above, the Amended

10

Complaint alleges that internal studies and investigations foretold that 100% of the TPMS valve stems would fail. (*Id.* ¶ 39).

Defendant argues that Counts IV and V are deficient because Plaintiffs failed to plead that FCA owed a duty to consumers where they have not alleged that FCA "had exclusive knowledge of the alleged facts withheld." (D.I. 13 at 15). Moreover, Defendant argue that "[b]ecause Plaintiffs had reason to know of the supposed defect when they purchased their vehicles, FCA US had no duty to disclose under Michigan . . . law." (*Id.*). Defendant misstates the law. The subsection relied upon for Counts IV and V requires a plaintiff to show that a defendant (1) failed to reveal a material fact, (2) the omission of that material fact "tends to mislead or deceive the consumer," and (3) the "fact could not reasonably be known by the customer." Mich. Comp. Law. Ann. § 445.903(1)(s). The statute, as written, does not apply the strict "exclusive knowledge" test sought by Defendant[6] but instead employs a test questioning, objectively, whether a consumer could have reasonably known of the material fact. Defendant contends Plaintiffs could have known about the defect. (D.I. 13 at 15). The Amended Complaint alleges that consumers could not. (D.I. 11 ¶¶ 196, 209). It would be improper, however, for the Court to consider the question at this stage. The Court need only determine whether the Amended Complaint complies with pleading requirements. Regardless of whether the Court applies the Rule 8 or heightened Rule 9(b) pleading standard, Plaintiff Canfield has set forth sufficient factual support to plead a plausible MCPA claim against Defendant.

---

[6] The case cited by Defendant for this proposition, *Montgomery v. Kraft Foods Glob., Inc.*, No. 12-00149, 2014 WL 1875022, at *2 (W.D. Mich. May 9, 2014), indicates that it also does not employ the standard sought by Defendant.

### C. Counts VI & IX (Implied Warranty)

The Report recommends that the Court deny the motion to dismiss as it relates to the implied warranty claims brought under Michigan law by Canfield and Peck (Count VI) and under Massachusetts law by Taylor (Count IX), finding that the claims were not barred by the statute of limitations and sufficiently alleged a breach of warranty. (D.I. 21 at 35). Defendant objects that the claims "are barred by limitations, the admissions in the Complaint prove that the vehicles are 'merchantable', and Plaintiffs did not give pre-suit notice." (D.I. 25 at 1). Defendant's objections are unpersuasive.

#### 1. Statute of limitations

Implied warranty claims under both Michigan and Massachusetts law are subject to a four-year statute of limitations, starting on the date of delivery. *See* M.C.L. § 440.2725(1), (2) ("[a]n action for breach of any contract for sale must be commenced within 4 years after the cause of action has accrued," "when tender of delivery is made"); *Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 323 (1st Cir. 2008) ("the cause of action for breach of warranty is time-barred if brought more than four years after tender of delivery") (citing Mass. Gen. Laws ch. 106, § 2–725(1), (2)).

As an initial matter, both Michigan and Massachusetts allow claims of implied warranty to be tolled if a Defendant engages in affirmative conduct preventing a plaintiff from ascertaining the existence of a claim. *See e.g., Hennigan v. Gen. Elec. Co.*, No. 09-11912, 2010 WL 3905770, at *6 (E.D. Mich. Sept. 29, 2010) ("To properly toll a statute of limitations under fraudulent concealment, '[t]he plaintiff must plead in the complaint the acts or misrepresentations that comprised the fraudulent concealment and must prove that the defendant committed affirmative acts of misrepresentation that were designed to prevent subsequent discovery.'") (quoting *Phinney v. Perlmutter*, 222 Mich. App. 513, 564 N.W.2d 532, 562–563 (1997)); Mass. Gen. Laws ch. 260,

§ 12 ("If a person liable to a personal action fraudulently conceals the cause of such action from the knowledge of the person entitled to bring it, the period prior to the discovery of his cause of action by the person so entitled shall be excluded in determining the time limited for the commencement of the action.").

Defendant argues that "both states' laws are clear that simple 'concealment' of information is not sufficient to toll *any* limitations period; rather, for tolling to be available there must be allegations of affirmative acts committed by the defendant against the plaintiff which were intended to, and did, prevent the plaintiff from timely filing his claim." (D.I. 25 at 2) (emphasis in original); *see also, Stetson v. French,* 72 N.E.2d 410, 412 (Mass. 1947) ("It is also true that ordinarily mere silence is not a fraudulent concealment, and that there must be something in the nature of positive acts with intent to deceive."). Here, however, Plaintiffs have alleged more than "mere silence." They have alleged, for example, that Defendant's internal communications and reports indicated a 100 percent failure rate for TPMS valve stems within five years, that this information was concealed from consumers, that Defendant "continued to replace the defective valve stems with valve stems made of the same metal alloys that could not withstand corrosion in the first place," and that Defendant informed customers that "good stems should not be replaced" and "this is how the vehicle was designed, engineered and built." (D.I. 11 ¶¶ 39, 81, 83). Having alleged affirmative actions that, taken as true, indicate that Defendant made efforts to actively conceal the failings of the TPMS valve stems, the Court finds, at the motion to dismiss stage, that Plaintiffs have alleged sufficient factual support to plausibly plead fraudulent concealment, which would toll the four-year statutes of limitations in Michigan and Massachusetts and allow Counts VI and IX to proceed.

### 2. Merchantability

"[I]mplied warranty cases concerning defective cars have recognized that merchantability implies not only that the vehicle can provide transportation, but that it can do so in a reasonably safe and controlled manner." *In re FCA US LLC Monostable Electric Gearshift Litigation*, 280 F. Supp. 3d 975, 1015 (E.D. Mich. 2017). At this stage, Plaintiffs "must allege that the defect rendered the car 'unfit for its intended purpose [by] compromis[ing] the vehicle's safety, render[ing] it inoperable, or drastically reduc[ing] its mileage range.'" *Id.* (citing *Troup v. Toyota Motor Corp.*, 545 Fed. App'x. 668, 669 (9th Cir. 2013)). Here, Counts VI and IX allege that "TPMS valve stems contain a dangerous safety defect in which they inevitably corrode when exposed to elements like road salt, leading to an unforeseeable tire air-out at any speed." (D.I. 11 ¶¶ 220, 248). Defendant argues that this is insufficient because "Michigan Plaintiffs Canfield and Peck, and Massachusetts Plaintiff Taylor effectively admit in the [Amended Complaint] that their vehicles were 5 years old (Canfield and Peck) and 4 years old (Taylor) before they experienced a problem with them." (D.I. 25 at 3). Regardless of the age of the cars, however, Plaintiffs allege that the defective TPMS valve stems could lead to a tire air-out at any time, which would lead to a hazardous situation for the driver. This allegation, supported by facts in the Amended Complaint indicating that such air-outs did in fact occur, are sufficient, at the motion to dismiss stage, to plead that the vehicles were not merchantable due to the defective TPMS valve stems.

### 3. Pre-Suit Notice[7]

Under Michigan law, a putative plaintiff "must provide reasonable notice in order to recover for a breach of warranty." *Eaton Corp v. Magnavox Co.*, 581 F. Supp. 1514, 1531 (E.D. Mich. 1984) (citing *Steel & Wire Corp. v. Thyssen, Inc*., 20 U.C.C. Rep. 892 (E.D. Mich. 1976); M.C.L.A. 440.2607(3)). Defendant argues that the Sixth Circuit, interpreting Michigan law, "has expressly held that even a defendant's actual knowledge of a defect does not excuse a plaintiff from giving individual pre-suit notice of breach." (D.I. 25 at 5 (citing *Johnson Controls, Inc. v. Jay Indus., Inc.*, 459 F.3d 717, 730 (6th Cir. 2006))). The Court is not persuaded.[8] The Amended Complaint alleges that Defendant "was provided notice of these issues and defects through 160 NHTSA complaints, online forums discussing the issue, an open Transport Canada investigation on the defect, actual notice from its consumers, directly and through its dealers, all of the facts alleged herein that were made available and unsealed in the Tomassini action, and the instant action previously filed in the United States District Court for the Eastern District of New York." (D.I. 11 ¶ 221). The Court finds that Plaintiffs have alleged sufficient facts that the Defendant was provided notice of the breach when Plaintiffs sought repair for the faulty TPMS valve stems. *See Zanger v. Gulf Stream Coach, Inc*., No. 05-72300, 2006 WL 1494952, at *4 (E.D. Mich. May 25, 2006)

---

[7] Defendant only objects to the Report's finding that Plaintiffs provided pre-suit notice with respect to the implied warranty claim under Michigan law. (D.I. 25 at 4-5). Defendant does not object to the finding that pre-suit notice was provided with respect to Count IX. Absent objection, and finding no clear error in the Report's analysis, the Court adopts the Report's recommendation as to pre-suit notice in connection with Count IX.

[8] The case on which *Johnson Controls* relies states that "proper notice minimizes the possibility of prejudice to the seller by giving him "ample opportunity to cure the defect, inspect the goods, investigate the claim or do whatever may be necessary to properly defend himself or minimize his damages while the facts are fresh in the minds of the parties." *See Roth Steel Products v. Sharon Steel Corp*., 705 F.2d 134, 151–52 (6th Cir. 1983). The Court finds that, as alleged and based on the pleading standards at this stage, Plaintiffs provided sufficient notice to meet the goals set forth in *Roth*.

(finding a defendant was put on notice of a product's problems when it was brought in for servicing and repairs). The allegations in the Amended Complaint go beyond the simple contention that Defendant's knew of the problems with the TPMS valve stem, and state that Plaintiffs took affirmative steps that would have informed Defendant of the issue. At this stage, the Court makes no determination about whether the notice is "reasonable," but, instead, finds that the Plaintiffs have sufficiently pleaded that Defendant received pre-suit notice.

### D. Count X (Express Warranty)

Defendant states that it does not object to the Report's recommendation that Count X (express warranty) be dismissed. (D.I. 25 at 1). Absent objection, and finding no clear error in the Report's analysis, the Court adopts the Report, which recommends dismissed Count X as time-barred. (D.I. 21 at 21).[9]

### E. Counts II, III, IV, V, VII, & VIII and Request for Injunctive Relief

The Report recommended that the Court grant Defendant's motion to dismiss Counts II and III in their entirety and Counts IV and V with respect to Plaintiff Peck, as time-barred. (D.I. 21 at 11, 13). It also recommended denying Defendant's motion to dismiss with respect to Counts VII and VIII because "plaintiffs have adequately stated a claim under the Massachusetts CPA" (*id.* at 33) and denying "FCA US's motion to dismiss with respect to plaintiffs' request for injunctive relief." (*Id.* at 39). Neither party has objected to the Report's recommendations regarding these

---

9     Defendant notes that in addressing the sufficiency of the pleading of the express warranty claims in Count X "for the sake of completeness," the Report states that it "recommend[s] denying-in-part FCA US's motion to dismiss with regards to Count X." (D.I. 21 at 38). Defendant then states that "in the event that this Court finds the express warranty claim is not barred by limitations, FCA US objects to the Magistrate's Recommendation that the motion to dismiss this claim be denied based on a design defect being at issue, the lack of a repair during the warranty period, and the lack of pre-suit notice." (D.I. 25 at 8). As the Court has adopted the Report's recommendation with respect to Count X being time-barred, it does not address Defendant's conditional objection.

16

counts or the request for injunctive relief. Finding no clear error in the Report's analysis, the Court adopts the Report as to Counts II, III, IV (with respect to Plaintiff Peck), V (with respect to Plaintiff Peck), VII, and VIII as well as injunctive relief.

## IV. **CONCLUSION**

For the foregoing reasons, Defendant's objections (D.I. 25) are OVERRULED, the Report (D.I. 21) is ADOPTED and Defendant's motion to dismiss (D.I. 12) is GRANTED-IN-PART and DENIED-IN-PART. An appropriate order will follow.